## No. 10,009.

## SIGFRIED GRUNER & CO. vs. AUG. STUCKEN.

Plaintiffs, as agents of defendants. entered into certain contracts of sale of cotton for future delivery with third persons. Held: That the legality of said contracts depends on the dealings between the parties thereto; and cannot be affected by the fact that in various previous transactions which plaintiffs, as agents, had made with *other* third parties, settlements had been made by adjustment of differences.

This raises no presumption that the parties to *these* contracts intended and impliedly consented to such mode of settlement.

Plaintiffs having been invested by defendant's firm with express discretionary power to manage and settle the contracts "as if they were their own," defendant is bound by the mode of settlement adopted in absence of proof of fraud or injury.

The liability of one partner for the contracts made by his copartner, without his knowledge or assent, is a question of agency. Third persons are not bound by special limitations in the articles of partnership of which they have no notice, but may assume that the partners have the power ordinarily incident to the business pursued by the firm.

Dealing in futures is not, as a matter of law, and in absence of evidence, presumed to be an incident of the business of cotton buyers and commission merchants.

But where defendant's firm had two places of business—one in New Orleans, directed by him, and the other in Savannah, conducted by his copartner, and where both branches had repeatedly employed plaintiffs in dealings in futures, and had received and settled the accounts. Held : that plaintiffs had the right to assume that such dealings were within the scope of the business, and within the presumed knowledge of all the parties.

In this case plaintiffs received from the Savannah partner two orders for purchase of futures, one for account of the firm, the other for his individual account. Held: that, without the clearest proof that the latter was for the firm, in such manner as to make it certain that, if profit had resulted, the firm would have received it, the latter cannot be held for the loss.

APPEAL from the Civil District Court for the Parish of Orleans. Houston, J.

*E. W. Huntington & Horace L. Dufour,* for Plaintiff and Appellant :

1. A contract of sale of property for future delivery is not an illegal as being of a gambling or wagering nature, unless there was a mutual intention not to receive or deliver the goods, mutually known to the contracting parties, and existing at the time of the contract was entered into. 37 Ann. 814; Art. 2983 C. C.

2. A partner is the agent of his copartners, and has the authority and power to bind them by acts done within the usual scope of their business.

3. The correctness of the claim in suit is established by the evidence.

*Farrar & Kruttschnitt* for Defendant and Appellee :

1. The facts show that the transactions sued on were individual speculations of defendant's former partner.

2. This is undoubtedly the case as to three hundred bales bought and sold in the name of Carl.

5. This last transaction sued on is characterized by the fifteen other transactions had between plaintiffs and Stucken & Co. From the fact that they were all settled by differences, the presumption is irresistible that it was the mutual intention of the parties to settle the last by differences.

4. This conclusion is emphasized by the fact that plaintiffs used these contracts on the floor of the Exchange in settlement with their fellow-brokers—in other words, ringed them out—and paid no money in settlement thereof. That is why the loss occurred to them.

5. After this use of the contracts on the floor of the Exchange, there was no contract left which Stucken & Co. could enforce. Irwin vs. Willar, 110 U. S. 499.

6. Under the facts, plaintiffs are not in the position of an innocent non-participating broker, seeking to recover disbursements made on account of his principal.

The opinion of the Court was delivered by

FENNER, J. The defendant was a member of the firm of August Stucken & Co., composed of himself and Carl Eglinger, and engaged in the business of buying cotton on commission. The business was conducted in New Orleans, under the control of Stucken, and in Savannah, under the control of Eglinger.

The firm was dissolved in April, 1885, and the present action is brought against Stucken as an individual member, on an account for

losses on certain contracts for future delivery of cotton entered into by plaintiffs, who are cotton brokers in New York, as agents and by orders of Stucken & Co.

Defendant sets up two defenses:

1st. He denies that plaintiffs, in said dealings, were employed or acted as agents of his firm, but alleges that their employment was by Carl Eglinger individually.

2d. He alleges that the dealings were gambling transactions, for losses on which no recovery can be had.

So far as the latter defense is concerned, we discover nothing in the case to difference it from that of Conner & Hare vs. Robertson, 37 Ann. 814, where we very carefully and fully defined the principles applicable to such dealings.

The evidence clearly shows that contracts (made under the rules of the New York Cotton Exchange), contemplated and required the actual delivery of the cotton, and created, as between the parties, absolute rights and obligations to demand and to make such delivery.

Although plaintiffs were guarantors of the contracts, yet, in making them, they acted as agents of their principal, and they dealt for him with other third persons. There is not a tittle of evidence of any agreement or mutual intent as between the parties to these contracts at the time of their execution, that they should be settled otherwise than according to their terms. The fact that in various previous transactions which plaintiffs had made for Stucken & Co., settlements had been made without actual delivery, cannot infect these contracts with any such presumed intention, because it does not appear that the third parties to the present contracts were the same as those dealt with in the former cases, and who consented to such settlements.

Neither can defendant complain of the method of settlement adopted by plaintiffs. After the contracts had been made, and on the eve of Eglinger's departure for Europe, he conferred upon plaintiffs the fullest possible discretionary power to manage and settle these contracts "as if they were their own." There can arise no question, therefore, as to their authority to settle in the way adopted, just as Eglinger himself might have done. There is no aspersion of their good faith or proof of any injury to defendants by their action. The case of Irwin vs. Williar, 110 U. S. 499, has no application, the brokers there having acted without authority.

We will next consider the authority of Eglinger to bind his copartner by dealing in cotton for future delivery, without the latter's actual

knowledge or consent. In the case just cited the Supreme Court of the United States said :

" The liability of one partner, for acts and contracts done and made by his copartner, without his actual knowledge or assent, is a question of agency. If the authority is denied by the actual agreement between the parties, with notice to the party who claims under it, there is no partnership obligation."

Here, there is no pretense of any notice to plaintiffs of any special limitations on the authority of the partners. But the court proceeds:

" If the contract of partnership is silent, or the party with whom the dealing has taken place has no notice of its limitations, the authority for each transaction may be implied from the nature of the business, according to the usual and ordinary course in which it is carried on by those engaged in it in the locality which is its seat, or as reasonably necessary or fit for its successful prosecution."

Here we have no evidence as to whether dealings in futures are in the usual and ordinary course of business of persons engaged in the business of cotton-buyers and commission merchants pursued by Stucken & Co., and we should hold, on the principle adopted in Irwin vs. Williar, that without evidence, as a matter of law, such dealings are not necessarily implied as essential parts of such a business.

Finally, the United States Supreme Court said :

"If it cannot be found in that, it may still be inferred from the actual, though exceptional, course and conduct of the business of the partnership itself as personally carried on, with the knowledge, actual or presumed, of the partner sought to be charged." Irwin vs Williar, 110 U. S. 499.

Now, in the instant case, it is proved that from 1881 plaintiffs have been frequently employed in future transactions by the firm of Aug. Stucken & Co., on orders, some of which came directly from the New Orleans house, controlled by defendant himself ; that accounts of these transactions have been rendered to, and settled by, the firm, both at New Orleans and at Savannah, and that no question of authority had ever been raised.

We consider that, under this course of dealing, plaintiffs had the right to assume that such transactions were within the scope of the partnership business, and within the presumed knowledge of all the copartners.

But, admitting Carl Eglinger's authority to bind his firm by dealing in futures in the name of and for account of his firm, the question

remains whether these particular transactions were for account of the firm.

The evidence shows that Eglinger sometimes dealt in futures on his own as well as on the firm's account, and that in the same month with these transactions he had so dealt through plaintiffs.

The orders concerned in this case were received and transmitted by Haynes & Schley, agents of plaintiffs in Savannah.

They are telegraphic, and the first, dated April 14, 1884, reads : "Buy two July Stucken." The other, dated April 15, 1884, reads : "Buy three July Carl," both signed Haynes & Schley.

The return telegrams of plaintiffs are, to the first: "Bought 200 bales July delivery 12.17 Stucken ;" to the second, "Bought 300 July 12.01 Carl order 15th."

When these contracts were closed out plaintiffs' telegram, announcing it, read : "Sold 200 bales July delivery Stucken, and sold 300 bales July delivery Carl."

This correspondence clearly and unequivocally impresses upon these dealings the character of transactions for separate and distinct accounts ; and while we may fairly infer that the word "Stucken" in the first order, was a telegraphic abbreviation of August Stucken & Co., the inference is irresistible that the word "Carl" in the second order, meant Carl Eglinger.

Had the transactions resulted in a profit, it is plain that Eglinger could have claimed the profit on the last order as his own, and that plaintiffs would have been bound to account to him alone. Nothing but the clearest explanation of the difference in the orders and distinct proof of a contemporaneous understanding between all parties could justify the shifting of the loss upon the firm. No such explanation or proof is found in the record. Eglinger merely says : "I gave the order for 500 bales in the name of August Stucken & Co.," which is obviously contradicted by the dispatch.

Gruner glibly says : "Carl, referred to in telegram of April 15, we understood to mean August Stucken & Co.; it had been so used on previous occasions." The correspondence contradicts such understanding, and is unexplained. Otto Arens, the other member of plaintiffs' firm, who testified, does not refer to the matter at all.

The testimony of Haynes & Schley is not taken.

The only payment on account of the loss was one of $500, made by Eglinger for Stucken & Co., in October, 1884. The heavy balance now claimed was suffered to remain uncollected without demand on plaintiffs until long after the dissolution of the firm of Stucken & Co.

Although Gruner met Stucken in Europe after the loss, he did not mention the matter to him.

We are bound to treat the order for account of Carl, as it appears on the face of the correspondence, as an individual transaction of Eglinger, for which defendant cannot be held responsible.

This leaves defendant liable only for the loss on the 200 bales, subject to the credit of $500, which having been paid by Stucken & Co., must be imputed entirely to their account.

That loss is the difference between 12-17, at which the cotton was bought and 11-01 at which it was sold................................$1024 00
Add 3-5 of commissions and charges......................,........   51 00

Total due and bearing 6 per cent. from June 24, 1884......$1075 00
subject to credit of $500, with like interest, from October 17, 1884.

It is, therefore, ordered, adjudged and decreed, that the judgment appealed from be annulled, avoided and reversed; and it is now. adjudged and decreed, that there be judgment in favor of plaintiffs and against the defendant, August Stucken, for one thousand and seventy-five dollars ($1075), with interest at 6 per cent. per annum from June 24, 1884, subject to a credit of five hundred dollars, with like interest, from October 17, 1884, defendant to pay costs of the lower and of this appeal.