GEORGE  O.  DAVIS  *v.*  F.  EVANS,  N.  H.  STRATTON  AND  A.  A.
MEAD.

*Book  Account.    Sutler.    Copartners.*

M., a sutler in Virginia, said to E. as E. was about starting for Vermont, " if you
will come back I will take you and S. in, and give each of you one-fourth and
take one-half myself, and I will furnish all the capital." E. replied that he would
come back, but S. was not present and knew nothing about the matter. Upon
arriving in Vermont E. purchased the boots in question of the plaintiff upon his
own credit, as he supposed, directing the plaintiff to send them to " F. Evans,
Georgetown, D. C.," and at the same time told the plaintiff that he was going
into business with M. and S. The plaintiff charged the boots to F. Evans & Co.
Soon after E. returned to Georgetown he took the boots, sold one case of them,
and took the remainder to M.'s sutler's tent, where E. & S. worked for eight
weeks, nothing being agreed upon as to how they were at work there. At the
expiration of this period, and when the boots, except six pairs, had been sold,
and the money received for them put into M.'s drawer, M., E. & S. formed a
co-partnership from that date with no reference back, M. furnishing the whole
capital. *Held,* that they were not jointly liable for the boots purchased by E.

If, when the co-partnership was formed, M. then became liable to pay for those
on hand, or to account for the avails of those previously sold, his liability was
to E. and not to the plaintiff.

Stratton having been found not liable for the debt originally, his subsequent verbal
promise did not render him so.

THIS was an action on book. At the March Term, 1866, PECK, J.,
presiding, the court rendered judgment on the auditor's report for the
plaintiff to recover against the defendant Evans, and in favor of the
defendants Mead and Stratton to recover their costs. To the judg-
ment in favor of Mead and Stratton, the plaintiff excepted.

The plaintiff's account was for five cases of boots and interest.
The report of the auditor finds that sometime in the fall of 1861, A.
A. Mead, one of the defendants, received the appointment of sutler
to the 6th regiment Vermont Volunteers, (then in Virginia,) and
assumed at once the duties and rights of such appointment. Prior
to the defendant Mead's appointment, one F. E. Smith had been the
sutler, and the defendant Evans had been a partner with Smith.
Immediately after the appointment of Mead, Evans left camp for
his home in Vermont. While at Washington, on his way home,
Mead, learning that Evans was going home, made a proposition to
Evans to come back to the army, saying to him, " If you will come

back, I will take you and Stratton in, and give each of you one-fourth and take one-half myself, and I will furnish all the capital." Evans thereupon told Mead that he would come back. The above was all the talk had between Mead and Evans upon the subject. At this time nothing had been said to Stratton upon the subject, by either Mead or Evans. Evans immediately left for home, which was at Marshfield, Vermont, and Mead went back to camp. After arriving at Marshfield Evans went to the plaintiff and bought the cases of boots charged, and left directions with the plaintiff to have them forwarded to " F. Evans," (which is the defendant Evan's name,) " Georgetown, D. C." Evans, at the time of purchasing the boots, told the plaintiff that he, Evans, was going back to the army, and was going into business with Mead and Stratton, but did not give the plaintiff to understand, nor did the plaintiff then understand, that Evans was at that time connected with the other defendants.

Evans supposed he was purchasing the goods on his own credit, not pledging any other's credit, and left the plaintiff without knowing how the plaintiff would make his charge. The plaintiff charged the boots to " F. Evans & Co.," but Evans had no authority to pledge the credit of Mead and Stratton, or either of. them, inasmuch as he was not then a partner with them or either of them. Neither Mead nor Stratton ever had notice how the boots were purchased, or of whom, or whether paid for or credit given, or what they cost. Evans sold into the 4th Vermont regiment one case of these boots upon their arrival, and took the pay himself. There was no evidence that either Stratton or Mead ever sold any of the boots. When Evans returned to the army he went into Mead's sutler's tent and worked there for about eight weeks, and Mead and Stratton were both there. For this period of eight weeks there was no arrangement made, or talk had, of how Evans and Stratton were at work in Mead's tent, and the stock in trade was the sole property of Mead, being what he had purchased since his appointment as sutler. When these cases of boots (except the one sold in the 4th Vermont regiment) were taken into the army, they were put into Mead's tent, and during this eight weeks they were all sold but about six pairs and the money put into the drawer of the defendant Mead, with the money taken for the

sutler goods.   At the expiration of this period, and when but six pairs of boots were on hand, the defendants Mead, Stratton and Evans had a talk together, which was the first one they had ever had (except the one at Washington, as above found) upon the subject of forming a co-partnership, and came to an agreement, and did there-upon go in together, and this had no reference back of that day. The terms of this agreement were that Stratton and Evans were each to have one-fourth and Mead one-half of the profits, and Mead was to furnish all the capital.   In a short time after this Mead left for Vermont, leaving the tent and property in the charge of Evans and Stratton, but it did not appear whether Mead ever went back to the army, or what became of the property in the tent or profits.   The partnership then ceased to exist, and has never been resumed.   Evans some time after came home to Vermont and went to the plaintiff and paid him thirty-five dollars on this account out of his own private money.   The plaintiff claimed that inasmuch as the boots were sold and the money went in with the other money in the tent, that would make the defendants all liable, but the auditor held otherwise.

The plaintiff offered to show by J. A. Wing, Esq., that Stratton, after the suit was brought and the partnership dissolved, told Wing the claim ought to be paid ; that the company had the boots and profits on them, and he would pay for them.   But the auditor did not find that Stratton was ever liable to the plaintiff for these goods, unless the court should be of the opinion that as matter of law the admission thus made would bind him the same as though he had been an original promissor ; if so, and not otherwise, the defendant Stratton should be held liable.

The auditor found that the defendant, F. Evans, is indebted to the plaintiff in the sum of $145.00, and interest on the same $37.00, to balance book accounts between the parties ; and that the defendants Mead and Stratton are neither of them indebted to the plaintiff in any sum.   Other facts are stated in the opinion.

*Wing & Lund,* for the plaintiff.

*Peck* and *Fifield,* for the defendant Mead.

Davis *v.* Evans et al.

The opinion of the court was delivered by

WILSON, J.  The leading question presented by the bill of exceptions is whether the defendants were partners at the time the property was purchased by Evans.  The report finds that sometime in 1861 the defendant Mead received the appointment of sutler to the 6th regiment Vermont volunteers, and entered at once upon the discharge of his duties under the appointment.  It appears that, prior to the appointment of Mead, Smith had been the sutler, and Evans had been his partner, but it does not appear that Evans, prior to the appointment of Mead, had been in any manner connected or interested with Mead in business.  The appointment of Mead as sutler vested in him the sole authority and imposed on him the entire responsibility in the management of the business of a sutler, agreeably to the regulations of the army ; and if these defendants were co-partners, as between themselves, or as to third persons, such relation and liability must have existed by force of contract, or in consequence of their having held themselves out to the world as partners so far as to render them such in respect to the claim of the plaintiff.  The facts found and reported by the auditor are decisive as to the question whether the defendants were partners as between themselves.  It appears that Evans, immediately after Mead's appointment, left for his home in Vermont.  Mead, on learning that Evans was going home, made a proposition to him to come back to the army.  The language of Mead to Evans upon that occasion was, " if you will come back I will take you and Stratton in and give each of you one-fourth and take one-half myself, and I will furnish all the capital."  Evans told Mead he would come back.  This was all the talk between Mead and Evans upon the subject at that time, and neither Mead nor Evans had said any thing to Stratton upon the subject, nor does it appear that the proposition was communicated to Stratton prior to the purchase of the property by Evans.  It is evident upon the facts reported that neither of the defendants was at liberty, upon the strength of that proposition, to purchase property upon their joint credit.  It was at most a mere proposition made by Mead to Evans as to the terms on which he would form a co-partnership with Evans and Stratton.  It was not a proposition of Mead

12

that he would take Evans in alone as a partner, but the proposition to Evans was to form a co-partnership which should consist of Mead, Evans and Stratton. Evans gave his consent to the proposition, viz: to become a partner of Mead and Stratton. The consent of Stratton was necessary in order to give the proposition the effect of an executory agreement to form a business connection between them, which had not been obtained at the time Evans made the purchase of the plaintiff; and there is nothing in the case which shows that the defendants were, at that time, partners as between themselves.

Whether the defendants were partners as to third persons, or in respect to this plaintiff, was to be determined by the auditor by a consideration of the intention of the defendants, of the alleged participation of profits, of the way and degree in which Mead and Stratton had held themselves out, or been held out by their consent, to the world as co-partners of Evans, of the acts and declarations of the defendants done, made or consented to by them in respect to their connection in business, and of the reasonable and probable effect of such acts and declarations as an inducement to the sale and delivery of the property. This branch of the case was fully examined by the auditor, and his report leaves nothing in doubt as to the facts upon which his decision is based. In the first place, the auditor not having found that a contract of co-partnership existed at the time of the purchase by Evans, or that the defendants had commenced business together, but having found expressly to the contrary, there could have been no intention on the part of the defendants to create a joint liability for the plaintiff's claim. Nor does it appear that either Evans or the plaintiff was deceived or misled by Mead's proposition to Evans.

The report finds that Evans came to Vermont, made the purchase in his own name, told the plaintiff that he was going into business with Mead and Stratton, (not that he was in business with them,) and directed the plaintiff to forward the boots to " F. Evans, Washington, D. C." Whether the plaintiff, at that time, made inquiry of Evans whether he had had encouragement from Mead and Stratton that they would form such business connection, or whether Evans volunteered to state to the plaintiff the proposition of Mead, does

not appear. But the report does find that the plaintiff, at the time of the sale and delivery of the boots, did not understand that Evans was in any manner connected with the other defendants, nor with either of them, in business. The declarations and acts of Evans standing alone, although evidence against himself, furnished no evidence of the liability of Mead or Stratton for a debt contracted by Evans, unless accompanied with proof showing them to have been carried home to the knowledge of the defendants Mead and Stratton, and by them in some way or other assented to. Neither Mead nor Stratton had any knowledge of the purchase of Evans until some time after it was made; nor does it appear that either Mead or Stratton had, by any act, declaration or otherwise, held himself out as a partner of both or of either of the other defendants; and it is not claimed that the plaintiff had any information at the time of the sale in respect to the connection or proposed connection of the defendants in business, except the single declaration of Evans before alluded to, which was not acted upon by the plaintiff in making the sale. From the facts reported the plaintiff must have understood that the defendants were not partners, or connected in business, and it would not be reasonable to suppose that the plaintiff was deceived as to the legal import of the declarations of Evans, nor as to the person on whose sole credit the property was delivered.

It is insisted by the plaintiff's counsel that the fact that these defendants subsequently formed a connection in business, and a portion of the property purchased by Evans of the plaintiff passed into the hands of Mead and became capital with which the defendants carried on their business, should render them liable to the plaintiff for the debt. But it appears that Mead was to furnish and did furnish the whole capital, and he was at liberty to purchase the stock of whom he pleased. If Mead and Stratton incurred no liability by reason of the purchase by Evans, the fact that the defendants subsequently formed a business connection would not render them jointly liable for goods previously purchased by Evans, unless they incurred such liability by contract for that purpose with Evans or with the plaintiff. The co-partnership had no reference back of the day on which it was formed, and it does not appear that Mead ever agreed

to pay the plaintiff, or that either Mead or Stratton had, at the time the co-partnership was formed, any notice or information that the boots were purchased on credit, or that the plaintiff claimed the defendants were jointly liable for the debt.

Treating the debt originally as the debt of Evans alone, as found by the auditor, it is evident that the subsequent sale or gift of the boots by Evans to Mead, or the intermingling them with the capital of Mead, furnished no ground of recovery in this action against these defendants jointly. The defendants, at the time they became partners, had no joint interest in the boots then remaining unsold. They were the property of Evans, and if Mead became liable at the formation of the co-partnership to pay for the boots which were on hand at that time, or to account for the avails of those previously sold, his liability was to Evans and not to the plaintiff.

The auditor having found that Stratton was not originally liable for the plaintiff's claim, the subsequent *verbal* promise of Stratton was not sufficient to render him liable for the debt.

We think the facts reported by the auditor fully justify the ruling of the county court, and the judgment of that court is affirmed.