JAMES TOWLE AND GEORGE G. DOUGLAS v. WILLIAM
DUNHAM ET AL., SURVIVORS, ETC.

[See 76 Mich. 251.]

*Partnership—Note given for individual debt of one partner—Evidence.*

1. The statements of one partner that notes given by him in the firm name were used in his private business, made after the notes were given and not in the presence of the payees, are not competent evidence of such fact in a suit upon the notes.

2. A statement made by a party at and during the time of a transaction is admissible as showing what the transaction was.

3. Requests to charge which, in effect, treat the case as one to be disposed of by the court, are properly refused where there is some evidence to go to the jury in support of the theory of the opposite party, and which, if sustained, entitles him to a recovery.

4. Where a note or other security is given in the name of the firm by one partner for his private debt, or in a transaction unconnected with the partnership business, to the knowledge of the person taking it, the other partners are not bound unless they have consented thereto; which assent need not be express, but may be shown by circumstances, like any other fact.

5. While separate items of testimony, standing alone, may not warrant the court in submitting the claim of a party in support of which they are offered to the jury, the court may be warranted in submitting all of the facts and circumstances which the evidence tends to establish, and in leaving it to the jury to determine, as a question of fact, whether all of the facts proven, and the inferences properly deducible therefrom, will, together with attendant circumstances, make out such claim.

Error to Montcalm. (Smith, J.) Argued December 3 and 4, 1890. Decided December 24, 1890.

*Assumpsit.* Defendants bring error. Affirmed. The facts are stated in the opinion.

*Godwin, Adsit & McKnight* and *George S. Steere,* for appellants.

*Fitz Gerald & Barry* and *William E. Hoyt* (*Francis A. Stace* and *Charles Chandler,* of counsel), for plaintiffs.

LONG, J. This case was once before this Court, and is reported in 76 Mich. 251. In the former proceeding the plaintiffs had verdict and judgment by direction of the trial court. The cause has again been tried before a jury, and verdict and judgment found for plaintiffs for the amount of the notes in controversy. The defendants bring error. Some of the facts are stated in the former opinion, but, as the court on the former trial excluded a large portion of the defense offered to the notes, some new facts are made to appear in the present trial.

It appears that the business at Chase in July, 1883, was owned by Henry Seaman and Hiram P. Webster as partners, each owning an undivided half interest. The firm of Arthur Meigs & Co. was then composed of Arthur Meigs, William Dunham, and Richard G. Peters. This last-named firm purchased from Mr. Webster his undivided half interest in the firm business with Mr. Seaman for $35,000, and thereupon the firm of Seaman, Dunham & Co. was formed. The members of this firm are the defendants in this suit; Mr. Seaman having deceased since the commencement of suit. When the firm of Seaman, Dunham & Co. was formed, Mr. Seaman owned one-half interest, and the firm of Arthur Meigs & Co., composed of Meigs, Dunham, and Peters, owned the other half interest. The firm of Seaman, Dunham & Co. continued its business for a year and one month, when it was dissolved; Arthur Meigs & Co. purchasing Seaman's interest for the sum of $10,000. The notes in suit were issued in the firm name, and put in circulation by Seaman, and it is not disputed that they were used in his private busi-

ness, and not for the benefit of the firm of which he was a member.

The contention of the plaintiffs on the trial in the court below was—

1. That the notes were issued and used by Seaman in his private business, with the knowledge and consent of his partners, Dunham, Meigs, and Peters, that they might be so issued and used by Seaman.

2. That, after they had been so used by Seaman, the other defendants purchased Seaman's interest in the business, agreeing to pay therefor the sum of $10,000, and that this $10,000, or so much thereof as was necessary for that purpose, should be applied by Dunham, Meigs, and Peters in liquidating these notes.

The defendants contended on the trial that they never knew that Seaman was using the firm notes in his private business, and never assented thereto, and that the plaintiffs in taking the notes were aware that Seaman had no right or authority to use the firm notes in his private business, and that they knew the notes to be the firm notes; that the $10,000 was to be made up by applying his overdrafts on the books, any non-authorized paper he had given, and the balance by the notes of Dunham, Peters & Co., the new firm, composed of Dunham, Peters, and Meigs.

It appears that at the time Seaman sold out to the other defendants his account was overdrawn in the sum of $3,165.19. The agreement for the purchase of Seaman's interest in the firm business by the other members of the firm is as follows:

"This agreement, made this sixth day of August, A. D. 1884, between Dunham, Peters & Co., of the first part, and Henry Seaman, of the second part, witnesseth, that said Dunham, Peters & Co. have this day bought out all of the interest of said Henry Seaman in the property and business of the late firm of Seaman, Dunham & Co. and Seaman & Dunham for the sum of $10,000, and which is to be paid to said Seaman as follows:

"*First.* The accounts of the late firms of Seaman, Dunham & Co. and Seaman & Dunham are to be balanced, and any sum that Seaman has overdrawn, if any, is to be applied as part payment of said ten thousand dollars.

"*Second.* Said Seaman has used the notes of the late firms of Seaman, Dunham & Co. and Seaman & Dunham in his private business, and the amount of such obligations of said firms so used by Seaman is to be next applied upon said purchase price of ten thousand dollars.

"*Third.* As soon as the balance to make up said ten thousand dollars shall be ascertained definitely, said Dunham, Peters & Co. are to give said Seaman their note therefor, due August 6, 1885, with interest at 7 per cent. from this date."

It is contended by plaintiffs' counsel that by this agreement the defendants recognized their liability on these notes, and by the agreement provided a fund for their payment; and it is not shown that any settlement was ever had with Seaman, nor any appropriation made of that fund.

It appears that Seaman carried on a business on his own account at Greenville, and had a contract with plaintiffs by which they sold materials for him; and when, in the course of such deal, Seaman owed plaintiffs, he gave them in payment for such indebtedness the notes of Seaman, Dunham & Co. The arrangement was that the plaintiffs were to sell shingles, the cut of a certain mill of Seaman's, on commission; that plaintiffs should from time to time make advances to Seaman, giving the notes of Towle, Douglas & Co. in proportion to the amount of shingles delivered to plaintiffs to sell, which it was agreed should not exceed at any time the amount of shingles on hand. It was further agreed that, if at any time when such notes became due sufficient returns had not been received from the sales of shingles to take care of such notes, Seaman should make provisions to meet them, either by giving his own notes, or in any other way he saw fit to provide for them, and in that way the notes

in suit came to be given.    During the transaction, two checks and eight notes were given, signed by Seaman with the firm name of Seaman, Dunham & Co.    The checks and four of the notes were paid.    It was contended on the part of the plaintiffs that, at the time of giving the first note signed in the firm name, plaintiff Douglas, who transacted all of plaintiffs' business, inquired of Seaman why he gave the firm note, and was answered that it was all right, and in accordance with the arrangement Seaman had with his partners.    Plaintiffs discounted the note in the usual way, and afterwards received the firm notes without further question.    William Dunham, one of the defendants, testified that he had no knowledge of the making of these notes until about the time of the dissolution with Seaman.    Meigs does not testify that he had no knowledge of their being given, or that he did not assent to such an arrangement.    Peters was not called as a witness on the trial.

The first assignment of error relates to the exclusion of testimony offered by defendants.    It was proposed by the defendants to prove the statements of Mr. Seaman, not made in the presence of either of the plaintiffs, that the notes in question were given in his private business. This the court ruled out, and upon this ruling defendants base their first assignment of error.    These were statements made after the notes were given, and not in the presence of the plaintiffs, and were properly excluded. They were statements of one joint defendant to another joint defendant, and under no rule could such statements be held to affect the rights of the plaintiffs.    The claim is made that this testimony was competent for the reason that Seaman had become identified with the plaintiffs in the wrongful use of the firm paper, and that therefore Seaman's statements in relation to it were admissions that would bind the plaintiffs.    There is no rule, even if

the claim were admitted that the plaintiffs were guilty of wrong-doing in taking this paper, that would make this statement of Seaman competent evidence. If made, it was after the transaction had closed, and upon that ground alone was properly excluded. *People v. Arnold,* 46 Mich. 269.

The third assignment of error relates to the refusal of the court to strike out the testimony of the witness Leroy Moore concerning statements made by Seaman to him as to why his bank account with him was kept in his individual name, and that it was actually the account of the firm of Seaman, Dunham & Co. This was a statement made by a party at and during the time of the transaction, and therefore admissible, as showing what the transaction was. 1 Bates, Partn. § 450, and cases there cited.

The assignments of error from 4 to 14, inclusive, relate to the refusal of the court to charge the jury as requested by the defendants. These requests are as follows:

"2. In this case, by the testimony of one of the plaintiffs, Mr. Douglas, it appears that the notes in question in this case were made by Henry Seaman and passed to Towle and Douglas, the plaintiffs, in a deal that existed between Towle and Douglas and Henry Seaman, in which Seaman, Dunham & Co. were in no way interested; and I charge you, as a matter of law, that these notes constitute no legal obligation against Dunham, Meigs, or Peters, who are the other partners besides Henry Seaman, composing the firm of Seaman, Dunham & Co.

"3. Some evidence has been offered in this case on the part of plaintiffs which they claim tends to show that the defendants, Dunham, Meigs, and Peters, authorized Henry Seaman to make use of the paper of Seaman, Dunham & Co. in his private business, and a part of this is the written contract given by Dunham, Meigs, and Peters to Seaman, promising to allow him $10,000.00 for his interest in the property of the firm. I charge you, as a matter of law, that this contract, and the evidence

offered with it, is not sufficient to charge the defendants with the paper in question; that Towle, Douglas & Co. were not parties to the contract between Henry Seaman and Dunham, Meigs, and Peters at the time of their dissolution, and are not entitled in this suit to the benefit thereof.

"4. Evidence has been put in in this case upon both sides bearing upon the question as to whether or not Seaman had drawn from Dunham, Meigs, and Peters, in the way of using their paper unlawfully, the full sum of $10,000 agreed to be paid to him for his interest in the firm property. The books of the company that were kept under the direction of Henry Seaman are introduced, and, as posted, it appears that Henry Seaman was overdrawn $3,165.19. The defendants also offer in evidence a number of checks and notes that were not upon the books, and which they say that Seaman used in his private business, making up a sum total that would raise the whole sum up to and above $10,000. Now, I charge you, as a matter of law, that if you shall find from the testimony in this case that Seaman received by way of checks and notes that he used unlawfully, added to the balance of the amount overdrawn, the full sum of $10,000, in that event plaintiffs cannot recover, and your verdict will be for the defendants.

"5. Examinations have been made before you, and inquiries into various items found upon the books of Seaman, Dunham & Co. on the part of plaintiffs; but an examination of the entire accounts, and the balance deduced therefrom, has not been prepared upon either side. I therefore instruct you that this evidence cannot be considered; that it is not competent in this manner to attempt to find the balance, as between themselves, of the amount owing to the several members of the firm of Seaman, Dunham & Co.; and that this evidence that has been admitted cannot be considered, as it is not competent for you to decide as to whether Seaman has been paid his full $10,000 or not, by calling attention to odd entries, and not taking into consideration the entire amount in the same manner.

"6. For the purposes of this case, it is the law that plaintiffs cannot recover upon the assumption that the notes in suit in the case might be recovered from defendants as if a part of the $10,000 agreed to be paid to Sea-

man for his interest in the property of the firm of Seaman, Dunham & Co., for the reason that no settlement or other lawful determination has been made between the members of the firm of Seaman, Dunham & Co. as to the amount that Henry Seaman would be entitled to upon an accounting between the parties; and that it is not competent for you to attempt in this case, in this manner, an accounting between the members of the firm.

"7. It being admitted in this case that these notes were given by Henry Seaman to plaintiffs to be used in the private business of Henry Seaman, this throws the burden upon the plaintiffs to prove that the notes were authorized or otherwise valid. This plaintiffs attempted to do by showing the agreement of Dunham, Meigs, and Peters to pay Seaman $10,000 for his interest, which was to include his overdrafts. The burden still remained upon plaintiffs to show negatively that the full sum of $10,000 has not been paid. This plaintiffs have failed to do, and for that reason plaintiffs cannot recover."

"9. Plaintiffs claim in this case that, although these notes may have been given by Mr. Seaman without the knowledge or authority from any member of defendants' firm at that time so to do, notwithstanding such want of authority defendants have ratified the acts of said Seaman by recognizing them, and by paying other notes given in a similar manner and of the same character. There can be no ratification upon the part of these defendants unless they had full knowledge of the acts to be ratified; and I charge you that there is no evidence in this case that defendants had any such knowledge, and that there is no evidence of ratification upon the part of said defendants of these notes in question."

"11. There can be no recovery upon the notes under and by virtue of the agreement made on the day of the dissolution, which has been introduced in evidence, until after there has been an accounting between Henry Seaman, or his estate, and the surviving members of the firm; and no such accounting is claimed or proven in this case, and your verdict must be for the defendants.

" 12. I instruct you, as a matter of law, that upon the facts of this case, as shown by the plaintiffs, plaintiffs cannot recover, and it is your duty to render a verdict for the defendants of no cause of action.

" 13. I instruct you, as a matter of law, that Towle and Douglas, not being parties to the agreement of

Meigs, Dunham, and Peters to allow him the $10,000, including what he had overdrawn, for his interest in the firm of Seaman, Dunham & Co., have no right to claim the benefit thereof, and cannot have any claim thereon in relation to the notes in suit from anything offered in this case.

"14. I also charge you that if, in making the contract between Seaman and the other members of the firm to allow him $10,000 for his interest in the firm, the defendants were deceived, and did not know that Seaman had used the checks and notes of the firm to a large amount not on the books, this would render the contract void as to defendants."

These requests, in effect, treat the case as one to be disposed of by the court.   There were other issues, and claim was made, upon other grounds, that the plaintiffs were entitled to recover, aside from the question of this settlement between the members of the firm of Seaman, Dunham & Co.   These requests were properly refused, as it is apparent that there was some evidence to go to the jury upon the theory that Seaman was authorized to issue the firm notes in his private business.   The issue between the parties did not rest upon the sole question of subsequent ratification of Seaman's acts in using the firm paper, but claim was made that he was authorized to do so by the other partners; that they were cognizant of the fact at the time of issue, and made no objection to his carrying on the business in that way.   But, aside from these questions, the court fairly left the question of the subsequent ratification by the other defendants to the jury.   The court instructed the jury upon that branch of the case as follows:

"An agreement in writing has been put in evidence, made at the time of the dissolution, in which Dunham, Meigs, and Peters have agreed to pay $10,000 for the interest of Seaman in the business.. That contract contains a provision in substance agreeing that the $10,000 shall be applied in payment of paper that Seaman had

used, signed 'Seaman, Dunham & Co.,' in his private business. Evidence is offered to show that, at the time this agreement was made, Seaman deceived the other partners in the amount of such paper he had made use of, and in the amount of moneys he had drawn from the firm, in that a large amount that he had drawn was not upon the books of the firm, and not known by the parties, as defendants claim, when this contract was made. Now, if you find it to be a fact that there had been, before this suit was commenced, paid by the overdraft of Seaman, the Leroy Moore & Co. notes claimed to have been paid by the defendants, and the other notes and checks used by Seaman in his private business, to make up this $10,000, then the agreement would be void. Defendants could not be held to the terms of the contract to their injury, if they were misled by Seaman, and made it without a knowledge of the fact that he had made use of the company's notes and checks."

Referring to the agreement itself, it provides for the payment of these notes first, and an accounting to Seaman for the balance afterwards. It is true that it was supposed the $10,000 would cover all overdrafts and firm papers used by Seaman for his individual benefit, and the plaintiffs' contention under the evidence was that the $10,000 would more than meet it, the defendants claiming that the $10,000 would not cover such overdrafts and notes; but, under the evidence in the case, this was a question of fact for the jury, and fairly submitted to them by the court under its general charge.

It is contended by plaintiffs' counsel that, though the notes were given to pay Seaman's private debts to the knowledge of plaintiffs, there were ample proofs to go to the jury tending to show that Seaman was fully authorized by the other members of the firm to make and deliver the notes in question. The evidence tends to show that, at the time of making the first note in the firm name, Douglas, one of the plaintiffs, at once made inquiry, and was answered by Seaman that he had author-

ity to sign the firm name to such note. Other paper bearing the signature of the firm had been made by Seaman, and issued to the plaintiffs, in the course of the same transactions and dealings in which the notes in suit were made, and such former paper had been paid at maturity. The dissolution agreement ratifies the authority of Seaman to make such notes, and provides for their payment. Defendant Meigs promised James Towle, one of the plaintiffs, that the notes should be paid, and other notes signed by Seaman in the firm name were paid by the firm of Arthur Meigs & Co. after the dissolution of the firm of Seaman, Dunham & Co., and after this agreement was signed. Some of the members of the firm knew of the use made by Seaman of these notes as early as August, 1884, and did not repudiate them, but assured the plaintiffs that they were all right, and would be paid. Meigs does not state the time when he first became cognizant of the fact of the use made by Seaman of these notes. Dunham and Peters knew of it at the time of dissolution, though it is claimed that they were not aware of the extent of the liability. It is not claimed that the dissolution contract was one upon which the plaintiffs might found a cause of action, but a circumstance tending to show a ratification, and to' be considered by the jury among other facts and circumstances in the case. All these facts and circumstances were proper to be considered by the jury in determining whether there. was a subsequent ratification by the other defendants. This was the theory of the court below as contained in its general charge, and there was no error in submitting these questions to the jury for their determination.

The court instructed the jury:

" It is a fact that the notes were given for the benefit of Seaman, and not for firm purposes, and this was known to Towle and Douglas. They (the plaintiffs) did

not stand then in this case in the position of innocent purchasers of firm paper, for in this case they must be held to have known that the consideration for the notes was the debt or promise of Seaman to the plaintiffs, and hence they knew that the firm received no consideration or benefit for the notes given. So, stopping right there, the plaintiffs could not recover. But the plaintiffs say— *First,* that the defendants consented to the giving of these notes by Seaman for his benefit; and, *second,* that the defendants have ratified the acts of Seaman, even if the notes were given without authority. There are two questions for you to settle:

"1. Did the defendants authorize or consent to the giving of these notes by Seaman for his individual benefit?

"2. If they did not authorize it, have they since ratified it?"

The court then called the attention of the jury to the various circumstances surrounding the case, and directed the jury that the burden was upon the plaintiffs to establish these facts. The charge was very full and fair.

It is well settled that where a note or other security is given in the name of the firm by one partner for his private debt, or in a transaction unconnected with the partnership business, and known to be so by the person taking it, the other partners are not bound unless they have consented. The assent, however, need not be express. It may be shown by circumstances, like any other fact. 1 Colly. Partn. § 439, note 4; *Gansevoort v. Williams,* 14 Wend. 133; *Gruner v. Stucken,* 39 La. Ann. 1076 (3 South. Rep. 338). In the present case there was some evidence from which the jury might properly infer, not only that Seaman had authority to issue the paper, but the circumstances strongly show that, in the agreement for dissolution made between Seaman and the other members of the firm, they had knowledge of the fact that these notes were outstanding, and that they were to pay and discharge them up to the amount of the $10,000; and

the circumstances warranted the jury in saying that Seaman's account was not overdrawn that amount. This would amount to a ratification of Seaman's acts in issuing the notes, even though their issue was not authorized by his partners.

Some question is raised that the court was in error in admitting the partnership articles of Seaman, Dunham & Co. We see no error in this.

Counsel for the defendants take up in their brief each separate item of evidence offered by plaintiffs to show the authority of Seaman to issue the notes, and as tending to show the subsequent ratification of the act; and counsel argue that such testimony would not support the claims made for it. One of these items, standing alone, may not have warranted the court in submitting to the jury the question of authority, or of subsequent ratification; but the court was warranted in submitting to the jury all the facts and circumstances which the evidence tended to prove, and leaving it to be determined by them, as a question of fact, whether all the facts proven, and the inference properly deducible therefrom, together with attendant circumstances, made out the plaintiffs' claim.

Some other questions are raised which we do not deem it important to notice.

The judgment must be affirmed, with costs.

The other Justices concurred.