HATCH *v.* REID.[1]

1. PUBLIC OFFICERS—TREASURER—LOAN OF PRIVATE FUNDS.
   Public policy does not forbid a county treasurer from advancing from his private funds the amount of a liquor dealer's tax, and from taking the latter's note for the loan. *Doran* v. *Phillips*, 47 Mich. 228, distinguished.

2. PARTNERSHIP—BILLS AND NOTES—EVIDENCE.
   H., a partner in the saloon business of R. & H., carried on a separate business in his own name, leaving the sole management of the firm business to his partner, R. The latter gave to H. $300 in money, and a note for $200, with which to

[1] Rehearing denied June 18, 1897.

pay the tax of $500 upon the business of the firm. H. visited the county treasurer, and borrowed $600 from him upon the firm's note, thereupon paying the tax on his own private business, as well as that of R. & H. In an action on the note, H. testified that his partner did not know that he was going to give the note, and R. testified that he never authorized it. and first learned of it at maturity. *Held*, that the evidence did not justify a finding that the note was given by the authority of R.

3. APPEAL—COMPLETE RECORD—CERTIFICATE OF TRIAL JUDGE.
The trial court's certificate that, "forasmuch as the matters set forth do not fully appear of record, [appellant] tenders this, his bill of exceptions, and prays the same may be signed and sealed by the judge of this court, and that said testimony be set forth in full, questions and answers, for a necessary and full understanding of the same, which said bill of exceptions is accordingly signed," etc., indicates that all of the evidence is set out in the record.

Error to Kent; Grove, J. Submitted February 2, 1897. Decided April 27, 1897.

*Assumpsit* by Reuben Hatch and another against Peter Reid and John B. Hughes upon a promissory note. From a judgment for plaintiffs, defendant Reid brings error. Reversed.

*L. E. Carroll* (*Kingsley & Kleinhans*, of counsel), for appellant.

*A. W. Johnston* (*John E. More*, of counsel), for appellees.

LONG, C. J. This action is brought to recover on a note made by Reid & Hughes and one Henry B. Grady, to Sherman T. Colson. At the time of the execution and delivery of the note, Reid & Hughes were doing business as retail liquor dealers at No. 28 Pearl street, and John B. Hughes, of that firm, was doing a liquor business at No. 31 North Ionia street, both in the city of Grand Rapids. Mr. Reid had sole charge of the business of Reid & Hughes, the latter spending no time nor exercising any

control over said business, but devoting his time to his separate business on Ionia street. Sherman T. Colson was treasurer of Kent county at the time. On June 23, 1890, Reid & Hughes were desirous of paying the liquor tax for that year, and obtaining the receipt provided by law; and defendant Reid executed a note for $200, which, with $300 in money, he delivered to John B. Hughes, instructing him to go to the treasurer's office, and pay the tax and procure the receipt for the firm of Reid & Hughes. Hughes went to the office of the treasurer, but, instead of delivering the $200 note and paying the $300 in cash, he made the note in suit of $600, due 60 days after date, payable to Sherman T. Colson, with interest at 7 per cent., signed Reid & Hughes, and delivered that note to Colson, and paid him $400 in cash, thereby paying the tax on his own private business, as well as that of Reid & Hughes, and received the two receipts. Mr. Colson would not accept the note of $600 without an indorser, and Hughes procured the signature of Henry B. Grady to it. This note was dated June 23, 1890. Five years after it was due, it was transferred by Colson to Anna A. Grady, the wife of Henry B. Grady, and afterwards transferred to the plaintiffs.

It is contended by the defendant Reid:

1. That the note was made and delivered without the knowledge or authority of defendant Reid, and was for the benefit of Hughes, which was well known to Colson; that Hughes was acting outside of his partnership authority, and therefore the note was void as against defendant Reid.

2. That the court erred in finding, under all the testimony, that the note was given by the authority of defendant Reid.

3. That the note is void, for the reason that the whole transaction in giving and receiving it was against public policy, as the county treasurer had no authority to take the note in payment of the tax.

We think the last contention cannot be sustained. The testimony of Mr. Colson shows that Hughes came to his

office, bringing $400 with him, and negotiated a loan from him of $600 more, with which to pay the liquor taxes for himself and the firm of Reid & Hughes, each being $500; that, for this loan of $600, Hughes gave the note in question; that the money Colson loaned was his own money, and kept in his private drawer in the office; that, when the note was delivered to him, he took $600 of his own money, and put it with the $400 furnished by Hughes, and paid the whole amount into the county funds; and that it remained there until it was accounted for to the proper authorities. The case is entirely different in principle from the case of *Doran* v. *Phillips*, 47 Mich. 228. There the note was given directly in payment of the tax. It is true that all agreements having the violation of public duty as their object, the neglect of official duties, or the seduction of those intrusted with the enforcement of the law from the performance of their duty, are disregarded by the courts; yet we find nothing in the conduct of Mr. Colson which may be characterized as unlawful, or in any sense a violation of public trust. He had a right to make a loan of his private funds, and apply the loan in payment of the taxes.

In reference to the first and second points, the court found in the seventh finding that "said defendant Hughes had authority to give said note of the firm of Reid & Hughes;" but counsel for defendant Reid contend that the evidence in the case does not support this finding. On his cross-examination, Mr. Hughes testified:

" *Q.* Did you talk the matter over with Mr. Reid before you went up to see Mr. Colson about taking the $700 note? [This evidently referred to the $600 note.]

" *A.* Not of that; I don't think I did.

" *Q.* He knew you went to get the license?

" *A.* Yes.

" *Q.* And he knew that you finally did get the license, did he not?

" *A.* Yes, sir.

" *Q.* Did you have authority to sign the name of the firm to that note?

"*A.* Yes, sir.

"*Q.* Did Mr. Reid know how you got the license that year?

"*A.* Yes, sir."

On redirect examination he was asked:

"*Q.* You say you had authority. Did you tell Mr. Reid that you were going to give the firm note of $700?

"*A.* No; I don't believe I did tell him that.

"*Q.* Where did you get the $300?

"*A.* I got $300 of Mr. Reid."

Defendant Reid testified that he never saw the note until the summer before suit was brought, and that he first knew of its existence when Mr. Colson came to see him, when the note was due; that he supposed it was for $200, and he offered to pay that amount, which was refused. He was asked if he ever authorized the making of this $600 note by Mr. Hughes, and stated that he did not.

We find nothing in this testimony showing any authority on the part of Mr. Hughes to make the note in question. It was not given for the payment of a partnership debt, but to pay the personal tax of Mr. Hughes upon a business in which Reid was not in any manner interested. Mr. Reid had already provided Hughes the means of paying the partnership tax. Mr. Colson must have known at the time of taking the note that it was given in part, at least, in payment of Mr. Hughes' personal tax, as the tax of Reid & Hughes was only $500, while the note was given for $600.

But counsel for plaintiffs contend that, should it be found that the testimony set forth in this record does not support the finding of the court below above set forth, the finding cannot be disturbed, as the record does not show that the whole testimony taken upon the subject in the court below is returned in this record. We find, however, a certificate added by the trial court, as follows:

"And, forasmuch as the matters set forth do not fully appear of record, the said Peter Reid tenders this, his bill of exceptions, and prays the same may be signed and

sealed by the judge of this court, and that said testimony be set forth in full, questions and answers, for a necessary and full understanding of the same, which said bill of exceptions is accordingly signed, this 25th day of May, A. D. 1896."

We think the certificate cannot be viewed in any other light than that the testimony is set forth in full, and that, therefore, the finding made by the trial court is not sustained by the evidence.

The judgment must be reversed, and a judgment entered here in favor of defendant, with costs of both courts.

The other Justices concurred.