## SMITH *v.* SHERIDAN.

1. PARTNERSHIP—PARTIES—LIABILITY FOR DEBT OF PARTNER.
   For money borrowed by an individual partner before the firm was in existence, the partnership is not liable even if the money was applied to partnership purposes.

2. SAME.
   Where one of the members borrowed money, most of which he used to find a suitable location, applying a small part of it to partnership purposes after the formation of the firm, and gave his individual acknowledgment, but later executed to plaintiff, without the knowledge or consent of the other partner, a duebill signed with the firm name, his act was unauthorized and the firm was not liable in an action on the instrument.

3. FRAUDS, STATUTE OF—PARTNERSHIP—CONTRACTS.
   The oral promise of one member of the firm in behalf of the copartnership that the firm should become liable for an individual debt of the other member of the partnership is void under the statute of frauds. 3 Comp. Laws, § 9515 (4 How. Stat. [2d Ed.] § 11399).

4. SAME—NOVATION.
   In the absence of evidence having a tendency to show that the original debtor was released from liability, the agreement was one to answer for the debt of another.

5. SAME—CONTRACTS—DEBT OR DEFAULT OF ANOTHER.
   Where plaintiff claimed that one member of the partnership promised that a loan made by her to the other partner should be repaid by the firm, and that she compromised a claim for wages against the firm in consideration of the promise, executing a release in full, the testimony being disputed by defendant, the statute of frauds barred a recovery on the alleged partnership contract.

6. SAME.
   Under 3 Comp. Laws, § 9512 (4 How. Stat. [2d Ed.] § 11396), the consideration for any contract required by the statute of frauds to be in writing need not be set forth in the contract, yet the agreement itself must be in writing, in order to permit recovery.

Error to Emmet; Shepherd, J.  Submitted April 9, 1913.  (Docket No. 17.)  Decided May 28, 1913.

Assumpsit by Sarah J. Smith against Thomas J. Sheridan and Nicholas B. Crevling, copartners as the Harbor Springs Woodenware Company, for money had and received.  Judgment for defendants.  Plaintiff brings error.  Affirmed.

*W. S. Mesick,* for appellant.

*Halstead & Halstead* and *Hatch, McAllister & Raymond,* for appellees.

STONE, J.  This is an action of assumpsit, brought against the defendants as copartners composing the firm of the Harbor Springs Woodenware Company. The declaration consisted of a special count, and the common counts in assumpsit; the special count alleging that the defendants, on the 3d day of March, 1908, borrowed from the plaintiff $1,050, in consideration of which defendants did, at the date aforesaid, make and execute in the name of the said firm a certain agreement in writing, as follows:

"HARBOR SPRINGS, MICHIGAN, March 3, 1908.
"Due Mrs. S. J. Smith, one thousand and fifty ($1,050) dollars, with interest, for value received.
"HARBOR SPRINGS WOODENWARE COMPANY."

The present suit was begun April 17, 1911.  The defendant Sheridan was not served with process, and did not appear.

Defendant Crevling pleaded the general issue, and gave notice thereunder as follows:

"(1) Payment in full of all demands of the plaintiff against either this defendant, or against said copartnership; (2) that this defendant never signed, executed, or delivered the instrument set forth in the declaration, or authorized any one to do so, and that this was known to the plaintiff when she received it, if it

was ever so executed, signed, and delivered at all; (3) that if said instrument was ever signed, executed, and delivered, the plaintiff gave no consideration therefor, and that no consideration therefor existed; (4) that if said instrument was ever signed, executed, and delivered, it was for purposes outside the matters connected with the copartnership heretofore existing between said defendants, and without the knowledge, consent, permission, authority, or direction of this defendant."

Defendant Crevling also at the same time made and filed an affidavit denying the execution and delivery of the written instrument declared upon; denied that he expressly or impliedly authorized, directed, or empowered, or consented to the execution, signature, or delivery of said instrument by any other person, nor was the said instrument executed, signed, or delivered by deponent, or by any person by him expressly or impliedly authorized to sign, execute, or deliver the same; that if said instrument was signed, executed, and delivered by the said Harbor Springs Woodenware Company, the same was executed by the copartner of deponent, without the authority, express or implied, of deponent, and against the express agreement upon which said copartnership was created, and against the direction of deponent, and without deponent's knowledge or consent, and for purposes outside of matters connected with said copartnership; and if said instrument was executed by any member of said copartnership in the name of said copartnership, the same was executed by the person or persons who signed, executed, and delivered the same without any authority so to do in behalf of said copartnership; and deponent averred that he never, directly or indirectly, expressly or impliedly, assented to, directed, or authorized the signature, execution, or delivery of said instrument, and deponent therefore denied the signing, execution, or delivery of said instrument. The affidavit further averred that the transaction in which

and for which the said instrument was given was not in the line of the business of said copartnership, nor did deponent know that said instrument was to be given until a long time after the execution thereof, to wit, on the 5th day of August, 1911, when the declaration in this case was served; and deponent averred that the same was executed secretly, clandestinely, and unlawfully by his copartner, if the same was executed at all, without the knowledge, authority, or consent of deponent, and in express violation of the terms of said copartnership.

Under the common counts the plaintiff sought to recover a further sum for services rendered to the copartnership. This last claim was abandoned by the plaintiff at the trial. It is undisputed that in April, 1907, Sheridan borrowed $1,000 from the plaintiff. This loan is the foundation upon which she builds her claim against the copartnership. The plaintiff testified that defendant Sheridan made certain representations to her at that time as to the use he intended to make of the money, and as to a prospective partnership with defendant Crevling, and as to the ultimate source from which payment would be made to her. It was not claimed that defendant Crevling was present when any such arrangement was made between plaintiff and defendant Sheridan, and in fact the plaintiff did not know defendant Crevling at that time. Defendant Crevling had not authorized Sheridan to borrow any money for the prospective partnership; and in fact the partnership was not formed until the 24th of October, 1907, at which time the defendant Crevling knew nothing about any such loan having been made to defendant Sheridan. The plaintiff testified that about a month after this loan she received from defendant Sheridan a paper, which was not produced, but which she testified was signed by Sheridan in his individual name. This paper had been lost.

The deposition of the defendant Sheridan was taken

and read upon the trial of the case. He therein testified that he used all but $150 of this $1,000 in looking up a location for business prior to the formation of the partnership, and that the remaining $150 went into the equipment of the mill which was erected after the formation of the copartnership. The articles of copartnership were in writing, and were introduced in evidence.

It developed on the trial, on the cross-examination of plaintiff, that about the time the copartnership was formed, she got another paper from Sheridan, which she could not produce at the trial, and concerning which her testimony is so vague and indefinite as to be worthless, by reason of her imperfect recollection of its contents and her confusion of this paper with the one first given her by Sheridan. From this testimony it is absolutely impossible to determine the character or legal effect of this second paper. But it cannot be claimed that it was of any greater validity, as an obligation of the firm, than the duebill sued upon, which it is claimed was given to replace it. Defendant Crevling was not shown to be connected with its issue, or even to have had knowledge of it.

On December 9, 1907, the partnership was dissolved by written agreement. In January, 1908, the partnership was re-formed and the original articles, with one immaterial omission, re-executed in writing.

On May 6, 1908, defendant Sheridan left Harbor Springs, and has never returned, since which time defendant Crevling has been in sole charge of the business. About June 20, 1908, plaintiff left the employ of the company. In August, 1908, a suit was begun in justice's court in the name of the plaintiff against the defendant partnership upon a claim for wages, the same wages that were claimed in this suit. This suit was not commenced by plaintiff herself, but by one Mae Kimball, a friend of hers, who had also sued for wages claimed to be due her. The plaintiff dismissed

this suit in justice's court about August 20th, and at that time gave defendant Crevling a receipt in full as follows ·

"HARBOR SPRINGS, August 20, 1908.
"Received payment in full for all services rendered the Harbor Springs Woodenware Company up to date.
"S. J. SMITH."

She testified upon the trial that she dismissed this suit, and gave this receipt upon defendant Crevling's promise that the copartnership would pay her the $1,000 that she had lent to Sheridan. Crevling denied that he made any such promise. He testified, however, that at another time he had told her that he would give Sheridan $1,000 for his interest in the partnership if Sheridan would authorize him to pay the money to the plaintiff, and that the plaintiff said she would try and get Sheridan to agree to this.

It is the claim of defendant that plaintiff's subsequent conduct comports perfectly with such an arrangement, and is wholly irreconcilable and inconsistent with her claim that Crevling agreed that the copartnership would assume Sheridan's obligation. In a letter written September 2, 1908, she said to defendant Crevling:

"I wrote to T. J. Sheridan as I agreed to, after meeting you at Harbor Springs. I told him under what circumstances you would pay me $1,000. He said he was pleased to learn that you would pay me $1,000 on his interest in the property, and he would credit you with that amount whether it is settled mutually or at the end of a suit. He says he will not sign off all his interest for that; that would be asking too much. * * * Now here is the offer of settlement he makes or asks: That you pay me $1,000 with interest, and him $1,500 now to help him make a new start, and he will assign the bill of sale and all other interest in the property to you. * * * Now I am sorry, but after all I could do with him, this is what he says. Please let me hear from you as to this."

September 14, 1908, she wrote Crevling another let-

ter, referring to a suit between Mae Kimball and the Woodenware Company:

"She (Miss Kimball) says if she can get a settlement with you she will use all her efforts to get T. J. Sheridan to settle with you for the $1,000.   *   *   * Now I got into this money difficulty with Sheridan the same as yourself, and I will try to help you out the best I can."

September 18, 1908, she wrote defendant Crevling another letter urging a reply to hers regarding settlement with Mae Kimball, and said:

"As I told you before, I think if she were out of the way, we could more easily settle with T. J. Sheridan."

September 22, 1908, defendant Crevling apparently answered these letters, for on September 26th plaintiff acknowledged receipt of his letter of the 22d, and regretted that he had not reached an amicable settlement with Miss Kimball, and observed:

"I believe I might have made a settlement with him (T. J.) but for her, but I did all I could with her, but she has been a hindrance to me."

About October 19, 1908, plaintiff received a letter from Sheridan, in which he acknowledged receipt of hers of the 15th instant, and said:

"I note what you say about Crevling's offer of settlement, that he will pay only $1,000. This being the case we will have to let the court settle it.   *   *   * If Crevling is willing to pay you $1,000, why does he not do it? I stated in the letter in which I made you the proposition of settlement that I would credit him with the $1,000 and interest on same, if he paid such, on any judgment I might later obtain, and this I am still ready to do, as I am very anxious to see you paid."

October 21, 1908, the plaintiff sent this letter to Crevling saying: "Hope you may come to some settlement with him." March 22, 1909, she wrote Crevling as follows:

"I thought of writing to John Star, if I put up T. J. Sheridan's interest in the H. S. Woodenware Co. for sale at auction, if he would buy it; but on consideration I thought I would see if you would like him in the company with you. *   *   *

"Now, Mr. Crevling, if there is any other person you think might buy, that you would care more about, please let me know, as I would want to know what amount he would give for it, as I would like to get enough to cover my debt against him (T. J. Sheridan), if possible. You see, then, T. J. Sheridan could not help himself. His interest in the H. S. Wooenware Co. would be taken from him. I thought, of course, for me to ask you to buy it would be the same to you. You know you had previously told me if I could get T. J. Sheridan to give up his contract with you, you would give me $1,000. So by this way he will lose his claim or contract with you. Now, Mr. Crevling, this is not my say, but 'legal authority.' *   *   * I was surprised when you said you had not gone back on your promise of the $1,000 to me if I could get T. J. Sheridan to give up his contract. *   *   *

"Now, Mr. Crevling, what I propose doing will be helping you out as well as myself and I think it is worth consideration. Had I heard of this plan before I should certainly have mentioned it. I do hate to have to trouble you, but it may put a stop to the other making trouble and expense after awhile. Oh, how enraged he would be at me if he knew what I was trying to do."

In August, 1909, the plaintiff commenced another suit in the circuit court against the defendant copartnership, in which she filed a bill of particulars November 27, 1909, and an amended bill July 5, 1910, both of which contained the claim for wages the same as in this suit, and an item of $1,000, loaned January 14, 1908, and neither of which mentioned any duebill or item of any kind under date of March 3, 1908. The last-named suit was discontinued by sipulation of counsel April 10, 1911, a week before the present suit was begun. Some time after the discontinuance last mentioned, plaintiff, who was then in Petoskey, re-

ceived by mail from Sheridan, who was then in Duluth, the duebill sued on in this case, which was dated back to March 3, 1908. Defendant Crevling had no knowledge of the giving of this paper, and it was never presented to him for payment. At no time between the giving of the receipt in full for services rendered, and the commencement of the first suit in the circuit court, or at any other time, did the plaintiff, or any one for her, call upon the defendant Crevling to perform the agreement which she claims he made with her, when she gave the receipt, viz., to pay her the $1,000.

Upon the trial of this case the plaintiff testified at great length in a rambling sort of way. Among other things, she testified as follows:

"That $1,000 (loaned to Sheridan in April, 1907.) is the only thousand dollars that I ever advanced to the Harbor Springs Woodenware Company in any way, and this paper (the duebill) cannot represent any other indebtedness. * * * He borrowed it of me in 1907, about April. * * * I gave this money to him, and he gave me—well, it wasn't just a note. I asked him for something and he gave me some kind of an acknowledgment. That was in the spring of 1907, and the partnership was organized in October, 1907. * * * I gave the money to Mr. Sheridan with the understanding that I would get it from the company when it formed. * * * I didn't know him (Crevling) at that time, but he (Sheridan) mentioned the fact of Mr. Crevling going in with him. I didn't know Mr. Crevling at that time—I hadn't seen him personally. * * * I got an acknowledgment at that time that he got the $1,000 from me; it was signed by him, Sheridan, in his individual name. I didn't get it on the day I loaned the money, but about a month afterward. * * * It was drawn out something like a note; it was a promise to pay $1,000. It didn't say how long after date—a promise to pay $1,000 with profits or interest—something like that, from the mill. Perhaps it said something about valuable mining papers. * * * I think, from recollection, it was put in, in some security. I think so

because I would require something of the kind at the time."

Sheridan testified, by deposition, among other things, as follows:

"*Q.* You borrowed this money from Mrs. Smith in 1906?

"*A.* No, sir; 1907. April, I think.  *  *  *

"*Q.* Did you give her any evidence of the indebtedness at that time?

"*A.* Yes, I did give her a sort of receipt for the money, showing that I got it from her.  *  *  *

"*Q.* State as to when the acknowledgment of the debt given Mrs. Smith, which you say she said was destroyed or obliterated—state when that was given to her.

"*A.* Some time in April—the date I couldn't give.

"*Q.* Was that at the time the money was borrowed?

"*A.* Yes, sir; well, I am not sure; it must have been some time afterwards.  *  *  *  I rather think it was some time afterwards that she came to my home and spoke of it and wanted some acknowledgment."

At the close of the testimony the trial court charged the jury as follows:

"Gentlemen of the jury: The court, after hearing the arguments of counsel, is of the opinion that the claim for $1,000 could not be made before you by the plaintiff in this case, because the only promise on the part of the copartnership to pay the $1,000 was upon the condition that she would withdraw her claim for wages against the partnership—that she• relinquish that—but she never did relinquish it. Without ever asking the copartnership, or without ever asking Mr. Crevling for that thousand dollars, she commenced a suit in this court, not the suit here pending, but one very similar to it, in which she claimed this four or five months' wages which she was there suing for; therefore there was no consideration moving to Crevling to found a promise on for the payment of this $1,000. It does not appear that the firm, as a firm, ever had the benefit of the $1,000 in any way, shape or manner. This was money that was advanced to Mr. Sheridan months before the copartnership was

formed; and, while she undoubtedly has a claim against Mr. Sheridan, she has none against the copartnership for $1,000. There was a claim which might have been presented to you, for her wages, but that the counsel has abandoned and withdrawn from your consideration. There therefore remains nothing for you to do but to return a verdict of no cause of action."

A judgment was thereupon entered for the defendants, with costs. The plaintiff has appealed, and has assigned error: (1) That the court erred in withdrawing from the consideration of the jury the plaintiff's claim for $1,050, and in directing a verdict for the defendants against plaintiff thereon, and in rendering judgment thereon, for the reasons that there was no consideration for the promise to pay the said sum, and that the defendant copartnership had never received the benefit of the same; (2) the court erred in refusing the request of counsel for plaintiff for leave to amend the plaintiff's bill of particulars; (3) the court erred in admitting in evidence the letters of the plaintiff. The remaining assignments of error relate to rulings in admitting and excluding testimony upon the trial.

1. The first assignment of error fairly raises the controlling question in the case, and that is: Who was primarily liable to the plaintiff for the loan of her $1,000? and if it was Sheridan, then, has his personal obligation been transformed into an obligation of the Harbor Springs Woodenware Company, and, if so, how? That this transaction was in its origin purely a personal one between plaintiff and defendant Sheridan clearly appears by this record and the testimony of plaintiff which we have quoted. Has the plaintiff shown any conduct or agreement on the part of the defendant Crevling that renders him or the copartnership liable for this original indebtedness? It is well settled that a partnership is not liable for money bor-

175 MICH.—26.

rowed, or goods bought, or contracts made by a partner in his individual capacity, and not in the character of an agent for the firm, simply because such money, goods, or contracts are applied to the use of, and inure to the benefit of, the firm. This is especially true where a loan was made before the copartnership was formed. 30 Cyc. pp. 483-484, 502-506, and cases there cited. *Childs* v. *Pellett*, 102 Mich. 558 (61 N. W. 54) ; *Towle* v. *Dunham*, 84 Mich. 268-279 (47 N. W. 683) ; *Whitla* v. *Butler's Estate*, 99 Mich. 51 (57 N. W. 1082) ; *Hatch* v. *Reid*, 112 Mich. 430 (70 N. W. 889).

By section 9515, 3 Comp. Laws (4 How. Stat. [2d Ed.] § 11399); any promise to answer for the debt of another is void unless it is in writing.

While it is well settled that partners are jointly and severally liable for the debts of the partnership, and that an oral promise by one partner to pay the debt of the firm of which he is a member is, in effect, a promise to pay his own debt, and is not within the statute of frauds, yet if neither the partnership nor promisor is originally liable on the debt, the promise to answer for it is within the statute. 20 Cyc. p. 171, citing the following cases: *Taylor* v. *Hillyer*, 3 Blackf. (Ind.) 433 (26 Am. Dec. 430), and note; *Wagnon* v. *Clay*, 1 A. K. Marsh. (Ky.) 257; *Greenleaf* v. *Burbank*, 13 N. H. 454; *Davis* v. *Evans*, 39 Vt. 182.

There is no testimony in this record tending to show that Sheridan was ever discharged from his obligation. The letters of plaintiff and her endeavors to get John Star to buy Sheridan's interest in the mill, and her entire conduct, absolutely negative the idea that she ever discharged him. *Durgin* v. *Smith*, 115 Mich. 239 (73 N. W. 361) ; *Harrington-Wiard Co.* v. *Manufacturing Co.*, 166 Mich. 276 (131 N. W. 559).

Counsel for plaintiff claims that the case is brought within the reasoning of *Calkins* v. *Chandler*, 36 Mich.

320 (24 Am. Rep. 593), and the numerous cases in this court which have followed that case. We think those cases are clearly distinguished from the instant case.

Nothing here appears by which it can be claimed in any way that defendant Crevling if he made the promise, which is claimed by the plaintiff he did make at the time the receipt in full for services rendered was given, had for its object a benefit he did not before enjoy, accruing immediately to himself, or that it was really paying his own debt and not that of Sheridan.

It cannot be said in any just sense that the debt of Sheridan to the plaintiff was the debt of the company, assumed by the partners, as is urged by plaintiff's counsel in his brief. It will be noted that it is not claimed that defendant Crevling gave any promise in writing at the time of the giving of the receipt by plaintiff, above referred to. So the case is well within the statute of frauds, notwithstanding that transaction.

And while it is true that under section 9512, 3 Comp. Laws (4 How. Stat. [2d Ed.] § 11396), the consideration of any contract or agreement required by the statute to be in writing need not be set forth in the contract, yet the agreement itself must be in writing. The position of the trial judge finds support in *Hubbardston Lumber Co.* v. *Bates*, 31 Mich. 158; *McQueen* v. *Gamble*, 33 Mich. 344; *Pearce* v. *Alward*, 163 Mich. 313 (128 N. W. 210). Yet we prefer to place our decision upon the ground that there has been no promise in writing shown on the part of defendant Crevling, to take the case out of the statute of frauds.

2. Appellant has failed to have returned to this court the bill of particulars in this case, and we are unable to determine whether the court erred in denying the request for leave to amend the bill of particulars or not, as we are unable to determine from the

record what is claimed by the assignment of error, not having the original bill of particulars before us.

3. We have examined with great care the entire record as to the remaining assignments of error. Most of them relate to the rulings of the court in the introduction or rejection of testimony. We find no prejudicial error in the rulings of the court upon these subjects, and nothing that would change the result of the suit. The letters of plaintiff were clearly admissible.

We are of opinion that the court reached the correct conclusion in the case, and we find no reversible error in the record. The judgment of the circuit court is therefore affirmed.

STEERE, C. J., and MOORE, MCALVAY, BROOKE, KUHN, OSTRANDER, and BIRD, JJ., concurred.