## John Calkins and others v. Thomas Chandler and another.

*Contracts: Promise to forbear: Consideration: Indefinite time: Declaration.* An agreement to extend time of payment and forbear to sue a third person who is plaintiff's debtor, is a sufficient consideration for defendant's promise to pay; and no definite time of forbearance being named, a count on an agreement to forbear for a reasonable time is good.

*Promise to pay debt of another: Statute of frauds.* A promise to make payments on the debt of another, of sums which the promisor should become liable to pay to the debtor for services to be performed by the latter for him, there being a consideration moving to him which was the inducement for making the promise, is not within the statute of frauds, as a promise to pay the debt of another.

*Statute of frauds: Promise to pay debt of another: New consideration.* While in many cases the test, whether a promise is within the statute of frauds as a promise to pay the debt of another, is, whether the original debtor remains liable on his undertaking and the promise is only collateral thereto, yet where the third party is himself to receive the benefit for which his promise is exchanged, it is not usually material whether the original debtor remains liable or not.

*Forbearance: Statute of frauds: Promise to withhold money for plaintiffs.* Plaintiffs having a chattel mortgage upon a saw-mill owned by M, it was verbally agreed between plaintiffs, M and defendants, M being then engaged·in sawing lumber for defendants, that in consideration of plaintiffs extending the time of payment of said mortgage, M should allow defendants to retain the sum of fifty cents per thousand feet of all lumber thereafter sawed by M for them, and that defendants should pay the same to plaintiffs:—

*Held,* The promise was valid and not within the statute of frauds; and defendants were bound to withhold from M the proportion of their

saw-bill they had thus agreed to pay to plaintiffs, and were liable to plaintiffs for the amount thereof, whether they did or not so withhold it.

*Submitted on briefs April 12.    Decided April 18.*

Error to Superior Court of Grand Rapids.

*H. E. Dewey* and *J. A. Fairfield*, for plaintiffs in error, cited: *1 Pars. on Cont.*, 368; 4 *East*, 462; 1 *Penn.*, 382; 3 *Penn.*, 282; 5 *Rawle*, 68; 11 *Mich.*, 219; 17 *Mich.*, 355; 4 *Am.*, 296.

*D. E. Corbitt*, for defendants in error, cited: *King v. Upton, 4 Greenl.*, 387; *Elting v. Vanderlyn*, 4 *Johns.*, 237.

COOLEY, CH. J :

The question on this record arises under the statute of frauds.    The case made by the plaintiffs below was rested on the testimony of Charles Merritt and Fred E. Remington. Merritt testified that "in the month of May, 1874, he was acting as agent for the plaintiffs, and the plaintiffs had a chattel mortgage against a saw-mill owned by a firm known as Medlar Brothers, and that he called upon said Medlar Brothers for pay.    The Medlar Brothers said they were sawing lumber for the defendants, and if the plaintiffs would extend the time of payment on the said mortgage, the said Medlar Brothers would allow the defendants to retain the sum of fifty cents per thousand for each thousand feet of lumber they would saw for the defendants, and the defendants should pay it to the plaintiffs, to which he, the said Merritt, agreed.    He and the Medlar Brothers then went to the office of the defendants and Fred E. Remington was present, and there it was agreed between all the parties that the plaintiffs should extend the time for payment of their mortgage during the next sawing season ; that the Medlar Brothers should allow the defendants to retain the sum of fifty cents on each thousand feet of lumber that should thereafter be sawed for them by the Medlar Brothers, and the defendants should pay the same to the plaintiffs to apply on the said mortgage which they held against the Medlar

CALKINS *v.* CHANDLER.

Brothers, and that the plaintiffs did extend the said mortgage through the next sawing season, and that the Medlar Brothers did saw four hundred thousand feet of lumber after the said agreement, for the defendants, and the said defendants did retain the sum of fifty cents on each thousand feet of lumber so sawed, but they did not pay any part of it to the plaintiffs."

Remington, who was one of the defendants, gave testimony tending to prove that he was one of the defendants; that he made an agreement with the Medlar Brothers and the plaintiffs, as stated by the last witness; that the Medlar Brothers sawed lumber for the defendants afterwards, and he charged them upon a book fifty cents on each thousand feet so sawed, while he kept the books.

Three principal objections are taken to the recovery which has been had in this case: *First,* that the agreement proved was void for want of consideration; *second,* that it was void under the statute of frauds because not reduced to writing; and *third,* that conceding the agreement to be valid, defendants could only be responsible under it for such moneys due the Medlar Brothers as they should retain in their hands; and in this case they offered, but were not allowed, to show that they retained nothing. These objections will be considered in their order.

I. The defect in the consideration is supposed to be, that there was no agreement to extend payment for any definite time. In *Rolle's Abridgment, 27 Pl., 45,* it is laid down that "if A be indebted to B in one hundred pounds, and B is about to commence a suit for the recovery thereof, but C, a stranger, comes to him and says that if he will forbear him he himself will pay it, this is a good consideration for the promise; B averring that he had abstained and forebore to sue A, *et ad hunc* did abstain and forbear; though no certain time be appointed for the forbearance; for it seems a perpetual forbearance shall be intended, the which he hath performed. So if he will forbear *paululum temporis,* this is good; plaintiff averring a certain time of

forbearance." In *Payne v. Wilson, 7 B. & C., 426*, the agreement counted upon was to suspend proceedings in consideration that defendant would pay a certain sum on account of the debt on April 1, following; and after verdict for the plaintiff, objection being taken that no consideration appeared, *Tenterden, Ch. J.*, said: "The promise made by the defendant was to pay £30 on the first of April, in consideration of the plaintiff's consenting to suspend proceedings. That imports that the proceedings were at all events to be suspended until that period; and I think that the averment that the plaintiff did suspend the proceedings, is sufficient after verdict; because it must be taken that it was proved at the trial that the plaintiff had suspended the proceedings, either for a time required by law, or for a definite or reasonable time." In *Sidwell v. Evans, 1 Pen. & Watts, 383*, the evidence showed an agreement in consideration of a promise of the creditor to "wait a while and not push" the debtor. The plaintiff had counted on an agreement to forbear to sue for a reasonable time; and the jury having found for the plaintiff on this evidence, the verdict was upheld. In *King v. Upton, 4 Me., 387*, the promise counted on was to pay the debt of another in consideration that the creditor would "forbear and give further time for the payment of the debt," naming no time. The plaintiff averred that he did thereupon forbear, and the consideration was held sufficient. *Elting v. Vanderlyn, 4 Johns., 237*, is to the same effect. Reference is also made to *Allen v. Pryor, 3 A. K. Marsh., 305*, and *Hakes v. Hotchkiss, 23 Vt., 231*. The averments in the declaration in this case are similar to those in *King v. Upton*, and we think the court was correct in holding them sufficient.

II. The second objection seems to be more relied upon. Our statute of frauds declares that "in the following cases, specified in this section, every agreement, contract or promise shall be void, unless such agreement, contract or promise, or some note or memorandum thereof be in writing and signed by the party to be charged therewith, or by some.

person by him thereunto lawfully authorized;" and it enumerates among other cases, "every special promise to answer for the debt, default, or misdoings of another person." It is claimed that the promise counted upon in this suit is of this nature; it being a promise by the defendants to answer for the debt and default of Medlar Brothers to the extent promised.

It is true that the promise of defendants was to make payments on the debt of Medlar Brothers, but it is also true that every payment they promised was to apply on an indebtedness that was to accrue against themselves for the sawing that should be done for them by the Medlar Brothers from time to time. Their promise was consequently a promise to answer for their own debt, and they took upon themselves no new obligation whatever. It has already been determined that the promise was made on a sufficient consideration, namely, the agreement to forbear foreclosure. But while in most cases of similar promises to be found in the books the benefit of the forbearance was expected to accrue to the debtor himself, in this case it is very evident the defendants entered into the arrangement for their own advantage, and that they promised to pay nothing for which they should not receive an equivalent in services performed for them. In other words, there was a consideration moving to them, which was the inducement to their making the promise. In many cases the test whether a promise is or is not within the statute of frauds is to be found in the fact that the original debtor does or does not remain liable on his undertaking; if he is discharged by a new arrangement made on sufficient consideration, with a third party, this third party may be held on his promise though not in writing; but if the original debtor remains liable and the promise of the third party is only collateral to his, it will in strictness be nothing more than a promise to answer for the other's debt. But where the third party is himself to receive the benefit for which his promise is exchanged, it is not usually material whether the original debtor remains liable or

not. This subject has been so fully considered in the New York courts that a reference to the leading cases of *Farley v. Cleveland, 4 Cow., 432; S. C. on Appeal, 9 Cow., 639,* and *Mallory v. Gillett, 21 N. Y., 412,* in which the other cases are collected, will be all we shall make here. In *Nelson v. Boynton, 3 Met., 396, 402, Shaw Ch. J.,* on an examination of the authorities says: "The rule to be derived from the decisions seems to be this: that cases are not considered as coming within the statute when the party promising has for his object a benefit which he did not before enjoy, accruing immediately to himself; but where the object of the promise is to obtain the release of the person or property of the debtor, or other forbearance or benefit to him, it is within the statute." There are many cases in Maine to the same effect, which are collected in *Stewart v. Campbell, 58 Me., 439.* In *Putney v. Farnham, 27 Wis., 187, 189, Dixon Ch. J.,* in considering a promise by the defendant to pay to the creditors of one Corlett, debts owing by himself to Corlett, says: "The question is whether such promise was within the statute of frauds, and we believe it to be well settled that it was not, although it was collateral to Corlett's own liability or promise to pay the same debts, and may be said incidentally to have guarantied such payment. It was a guaranty in form, but not in substance or effect, within the meaning of the statue of frauds. It was not a *mere* promise by the defendant to be responsible for the debts of Corlett to those parties, and to pay those debts, but a promise by him to pay his own debt in that particular way. It was a promise founded upon a new and sufficient consideration moving to the promisor from the debtor at the time the promise was made. Such a promise or agreement is not within the statute of frauds." In further illustration of the same doctrine reference is made to *Brown v. Weber, 38 N. Y., 187; Clymer v. De Young, 54 Penn. St., 118; Eddy v. Roberts, 17 Ill., 505; Wilson v. Bevans, 58 Ill., 232; Runde v. Runde, 59 Ill., 98; Ford v. Finney, 35 Geo., 258; Davis v. Banks, 45*

*Geo.; 138; Fullam v. Adams, 37 Vt., 391, 396; Andre v. Bodman, 13 Md., 241, 255; Britton v. Angier, 48 N. H., 420; Johnson v. Knapp, 36 Iowa, 616; Besshears v. Rowe, 46 Mo., 501.*

The exact point has not hitherto been presented for adjudication in this state. In *Brown v. Hazen, 11 Mich., 219,* a verbal promise by the defendant to pay to the plaintiff a debt owing to him from a third person was held to be within the statute, there being no consideration moving from the plaintiff to the defendant. There is some discussion of the general subject in *Gibbs v. Blanchard, 15 Mich., 292,* but it has no very direct bearing. We think the authorities support the judgment.

III. The question which remains is, whether if the defendants, before suit was brought, had paid over to Medlar Brothers all that was due for the sawing, this would discharge them from their promise to the plaintiffs. If it would, it must be on the ground that they were liable only while they were the debtors of Medlar Brothers, and because of their indebtedness, which in connection with their promise would in effect make them the custodians of a fund set apart for application to the plaintiff's demand. But we think it became their duty under their promise to observe it by withholding from Medlar Brothers the proportion of their bill which they had agreed to pay to the plaintiffs; and that they could not discharge themselves by a disregard of their promise. It is a paradox to say that a promise is valid, but that the promisor may relieve himself from its obligations by violating it.

The judgment must be affirmed, with costs.

The other Justices concurred.