WiXJjiAMS, J.
The contract sued on, it is admitted, was not in writing. The plaintiff’s testimony, if believed, was sufficient to warrant the jury in findingthat the verbal agreement on which' the action was founded, was made between the plaintiff and the defendant J. S. Crawford. The bill of exceptions discloses that it was agreed on the trial, that if a verdict was rendered against either defendant, it might be against both. The jmy having found for the plaintiff, the agreement as he claimed it must be considered established, and the question presented on the reeord therefore, is whether that agreement is within the statute of frauds. The motion of the defendants to withdraw the case from the jury and for judgment, at the conclusion of plaintiff’s testimony; the motion for a new trial on the 'ground that the verdict is not supported by the evidence,; and is contrary to law; and the exceptions to the charge of the court to the jury, and the refusal to give in charge certain instructions requested by the defendants, are different modes of raising the same question. The question stated, is the only one discussed by counsel, and the only substantial one calling for decision.
That portion of the statute of frauds which relates to this case, is now found in section 4199 of the Revised Statutes, and is as follows: “No action shall be brought whereby to charge the defendant, upon any special pi’omise, to answer for the debt, default or miscarriage, of another person; * * * * *245 unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing, and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized.”
The object of the statute undoubtedly was, to secure the highest and most satisfactory species of evidence in cases where parties, without apparent benefit to themselves, enter into stipulations of suretyship j and where there would be great temptation, on the part of creditors, in danger of losing their debts by the insolvency of their debtors, to support suits by means of false evidence, by coloring conversations and exaggerating words of commendation or expressions of encouragement into positive contracts. But this commendable purpose of the statute furnishes no warrant for enlarging its provisions, or extending them to cases not fairly within them. It will be seen that the statute, by its terms, operates on cases where there is a primary or original debt or obligation, upon which is based a collateral promise of another person, to answer for such primary, or original debt, or obligation. Hence, if there be in fact no such primary debt or obligation, or the same is extinguished and discharged, or if the promise be not to answer for such primary debt or obligation, but itself be a primary or direct promise for a sufficient consideration, the statute does not apply or require the promise to be in writing.
“ The statute contemplates the mere promise of one man to be responsible for another, and cannot be interposed as a cover and shield against the actual obligations of the defendant liimself.” Brown on Statute of Frauds, sec. 165.
“ It is to be observed in regard to these promises founded on the liability of another person, that’ to constitute them such as are necessary by virtue of the statute of frauds to be committed in writing, the consideration should appear to have an immediate respect to the liability of the party promised for. If the promise spring out of any new transaction, or move to the party promising upon some fresh and substantive ground of personal concern to himself, the statute of frauds does not attach upon such promise, but the same may be good if the con *246 sideration be sufficient, though existing in parol. Roberts on Fraud, 231-2.
In Nelson v. Boynton, 3 Met. 400, Shaw, C. J., says: “ The terms original and collateral promise, though not used in the statute, are convenient enough to distinguish between the cases, where the direct and leading object of the promise is, to become the surety or guarantor of another’s debt, and those where although the effect of the promise is to pay the debt of another, yet the leading object of the undertaker is, to sub-serve or promote some interest or purpose of his own. The former, whether made before or after, or at the same time with the promise of the principal, is not valid, unless manifested by evidence in writing; the latter, if made on good consideration, is unaffected by the statute, because, although the effect of it is to release or suspend the debt of another, yet that is not the leading object, on the part of the promisor. * * * The rule to be derived from the decisions seems to be this; that cases are not considered as coming within the statute, when the party promising has for his object a benefit which he did not before enjoy, accruing immediately to himself; but where the object of the promise is to obtain the release of the person or property of the debtor, or other forebearance or benefit to him, it is within the statute.”
The supreme court of the United States has thus stated the rule: “ Whenever the main purpose and object of the promisor is not to answer for another, but to subserve some pecuniary or business purpose of his own, involving cither benefit to himself, or damage to the other contracting party, his promise is not within the statute, although it may be in form a promise to pay the debt of another, and although the performance of it may, incidentally, have the effe9t of extinguishing.that liability.” Emerson v. Slater, 22 How. 43.
And such is the generally recognized doctrine in this country.
“ The distinction is between a promise, the object of which is to promote the interest of another, and one in which the object is to promote the interest of tire party making the promise. The former is within the operation of the statute, the latter is unaffected by it; and when the promisor is him *247 self to receive the benefit for which the promise is exchanged, it is not usually material whether the original debtor remains liable or not.” Reed on Stat. of Fraud, sec. 70-73; Calkins v. Chandler, 36 Mich. 324.
Within the rules thus maintained by the great weight of authority, the agreement in question is not collateral, and the statute of frauds interposes no obstacle to its enforcement. At the time it was made, all the parties recognized the fact that Smith, the contrator, had abandoned, and was not expected to further perform his contract with the defendants. They, finding that he had left the brick work incomplete, entered into a contract with another sub-contractor, to complete it, and pay him for the same. The plaintiff had partly performed his contract with Smith, but had received no compensation; he was informed by the defendants that Smith was gone and would never return. It is true, he might have finished the work he agreed to do and hold Smith liable on his contract, though such course promised no good results; but after Smith forsook the job, relinquished his contract and left the county without paying or making any provisions for paying the plaintiff, was the plaintiff bound to incur still further outlay of time and money, without any reasonable prospect of payment ? Or might he not- acquiesce in such relinquishment of the contract, leaving him at liberty to contract with the defendants, if he chose to do so ? At all events, if he chose, in view of Smith’s conduct, to give up his job, refuse to go on with the work, and take the consequences of a suit by Smith, or lose what he had already expended, rather than risk any further outlay, it was no concern of the defendants, nor could they interpose any objection; he was under no obligation to them to complete the work. Their house must then remain unfinished, or they must procure its completion under some new agreement; and they had already entered into a new contract for the unfinished brick work. When, therefore, they agreed with the plaintiff, that if he would complete the roof and spouting, they would pay him the sum agreed on, their leading, and, indeed their only object, was to subserve a business purpose of their own, and secure to themselves the *248 benefit of having their house completed, instead of allowing it to stand in the useless condition in which it was left by Smith. Such an agreement is in no sense a promise to' pay Smith’s debt. Neither party contemplated that Smith would or might pay any part of the amount •, on the contrary they regarded him as no longer connected with or concerned in the transaction. From that time forward the plaintiff worked under his new contract with the -defendants, and it is wholly immaterial that the price agreed to be paid was sufficient to compensate the plaintiff for the whole work performed by him.
The supreme court of Illinois has made a practical application of the rules stated to a case in no way distinguishable from this.
In Clifford v. Luhring, 69 Ill. 401, it appeared, that the defendant Luhring, let the contract for building a house to Gruis, who sub-contracted the plastering to Clifford, the plaintiff. Gruis failing to complete the contract, the plaintiff made known the fact to defendant, and informed him he would be obliged to quit the work, when the defendant told him to go on and he would pay him. It was held the promise was not within the statute of frauds.
The syllabus of the case is: “ Where the leading object of the undertaking is, to promote some object of the party’s own, his promise to pay is not within the statute of frauds, although its effect is to release or suspend the debt of another. Thus, where the defendant employed a party to build a house, and, on his failure, the plaintiff, who was a sub-contractor, made known the fact to the defendant, and informed him that he would be obliged to quit work, and the defendant thereupon told the plaintiff to go on with his part of the work, and he would pay him; Held, the defendant’s undertaking was not collateral, but an original one, and was not within the statute of frauds, as assuming to answer for the contractor, his main object being to subserve a purpose of his own.”
Berchell v. Neaster, 36 Ohio St. 331, is cited by counsel for plaintiffs in error, as an authority, sustaining their claim, that the defendants’ promise is within the statute. But in all that classifies that case among collateral and conditional jjromiscs, *249 and distinguishes it from original and unconditional ones, it bears no analogy to the case under discussion.

Judgment affirmed,.