ARCHIBALD BUCHANAN AND ANOTHER vs. SARAH E. MORAN AND HUSBAND.

New London Co., May T., 1892. ANDREWS, C. J., CARPENTER, SEYMOUR, TORRANCE and FENN, Js.

The defendant owned a house in which a builder was making alterations under a contract, and the plaintiffs as sub-contractors under the builder had undertaken to do the painting for $170. After they had done $40 worth of work the builder failed, and the plaintiffs decided to aban-

*don the job and lose what they had done, and removed their ladders and other implements. The builder then made another contract with the defendant, by which he agreed to do the remainder of the carpenter work, and the plaintiffs, at the solicitation of the defendant, agreed to do the painting, for which she agreed to pay them $170. Held that the defendant's agreement was not one to pay the debt of the builder, and was not collateral to the builder's agreement, and so did not need to be in writing under the statute of frauds.*

[Argued June 2d—decided June 30th, 1892.]

ACTION to recover for work done ; brought to the Court of Common Pleas of New London County, and tried to the court before *Crump, J.* Facts found and judgment rendered for the plaintiffs, and appeal by the defendant. The case is fully stated in the opinion.

*S. Lucas* and *W. H. Jennings, Jr.*, for the appellant.

*J. J. Desmond*, for the appellees.

TORRANCE, J. This is an action brought to recover compensation for work done and material furnished in painting and papering a dwelling-house. The case was tried to the court, and upon the facts found judgment was rendered against Sarah E. Moran, one of the defendants. The facts so found were substantially the following :—

In January, 1890, said Sarah, being the wife of the other defendant, was the owner of said dwelling-house, which her husband desired to have remodeled and altered. To that end she caused certain plans and specifications of the proposed alterations to be made by an architect, and she and her husband entered into a contract with one Devine, a builder, to make and complete the alterations for a specified sum. In pursuance of the contract Devine began to work on the house, and made a sub-contract with the plaintiffs to do all the papering and painting called for by the plans and specifications, for the sum of one hundred and seventy dollars.

The plaintiffs began work under the sub-contract and put a first coat of paint or " priming " on the house, and then

stopped their work because the work on the house was not sufficiently advanced to allow them to continue at this time. Shortly afterwards, and before they resumed work, the business affairs of Devine became involved and some of his creditors attached the money due to him under the contract with the defendants.

In this condition of things, the plaintiffs becoming alarmed as to the financial responsibility of Devine, decided to throw up their contract with him and refused to go on with their work even at the risk of losing what they had already done, which was worth forty dollars. In pursuance of this decision they removed from the Moran house their ladders and other apparatus which had been left there when they stopped work as aforesaid, and then informed the defendant Sarah that they would do no more work on her house for Devine, and would suffer the loss of all they had done rather than do any more work for him. She thereupon told them that it was her wish to have all the painting done by the plaintiffs, and promised that if they would continue and complete the work they had begun she would herself pay the whole amount of one hundred and seventy dollars.

The plaintiffs thereupon entered into a new contract with her on these terms.

Relying upon this promise of the defendant the plaintiffs took back their tools and appliances to the building and proceeded with and finished their work according to the plans and specifications, and charged the defendant on their books the sum of one hundred and seventy dollars, which she had agreed to pay them therefor.

After the attachment of the money due to Devine he abandoned the contract first made with the defendants, and entered into another contract with them covering only the remainder of the carpenter work to be done on the house.

Some other facts are found but it is unnecessary to state them here in substance or in detail.

In the court below the defendants claimed that the evidence proved a special promise to answer for the debt, default or miscarriage of another, and so was within the

statute of frauds. The court found that " the evidence showed a new contract between the plaintiffs and defendant upon a new consideration."

Strictly speaking, perhaps no question of law is formally raised by such a claim or such a ruling upon it, for ordinarily the question whether evidence " proves " or " shows " anything, and if so what, is a question of fact and not of law. We are inclined however to interpret the entire record as fairly raising the question whether the contract sued upon was within the statute of frauds, and this is the only question in the case.

The other points assigned for error on the appeal were not raised in the court below and decided adversely to the claims of the defendants, and for this reason we will not consider them.

As we have seen, the court below finds that Mrs. Moran and the plaintiffs entered into a new contract, upon a new and sufficient consideration, by the terms of which contract the plaintiffs were to finish and complete the painting of her house according to the plans and specifications and she was to pay them therefor the sum of one hundred and seventy dollars.

The object of the contract was a lawful one, the parties were capable of contracting, the consideration was a legal and sufficient one, the plaintiffs have fully performed the work and the defendant retains the full benefit of it, and she has paid nothing therefor. Why should she not pay for this work done under such circumstances ? She is certainly not now liable for the value of it to Devine or to any one else, if she is not liable to the plaintiffs. Her sole reason for refusing to pay is based on the claim that her contract with the plaintiffs was an agreement collateral to the subcontract made between the plaintiffs and Devine, and is therefore within the statute of frauds. We think this claim is without foundation.

Certainly the contract sued upon is not, in terms or in form, collateral to any other contract. It is not in terms or in form a contract on the part of Mrs. Moran to answer

Buchanan v. Moran.

for any debt, default, or miscarriage of Devine; nor an agreement in form to pay anything which the parties to it considered to be then due from Devine under his sub-contract with the plaintiffs, or which thereafter might by any possibility become due from him under the sub-contract, or for which he then was or in any way continued liable. On the contrary it was entered into on the supposition that the sub-contract was forever at an end, so far as any liability of Devine thereunder was concerned.

It is not perhaps quite clear from the record whether Devine abandoned his contract to do the entire work before or after the making of the contract sued upon. We think the fair interpretation of the finding leads to the conclusion that it was done before, because, for one thing, it is quite reasonable to suppose that Mrs. Moran did not agree to pay the plaintiffs one hundred and seventy dollars until she was released from her obligation to pay Devine for doing the same work. Certainly he did at some time abandon his first contract and entered into another which did not include the painting and papering of the house. He did this with the full consent of the defendants. When this was done it operated practically and substantially as an abandonment on the part of Devine of all rights under the sub-contract with the plaintiffs, except perhaps the right to recover damages, if any, for the past breach of it by the plaintiffs.

If this was done before the contract sued upon was entered into, then at that time there was no contract between the plaintiffs and Devine to which the contract sued upon could have been collateral within the meaning of the statute of frauds. In that case also it would be impossible to hold that the contract sued upon was a contract or promise to answer for the debt, default or miscarriage of Devine. But even if it be true, as perhaps it is, that Devine did not abandon his first contract till after the contract sued upon was made, it cannot aid the defendant, for before that contract was made the plaintiffs had thrown up, renounced and abandoned the sub-contract on their part. They had abso-

lutely refused to go on with the work under the sub-contract, and thereby lost and abandoned, and intended to lose and abandon, all they had already done under it, so far as any claim against Devine was concerned.

They of course remained liable to Devine for this breach of contract, but he was under no legal obligation to pay them for what they had done. They had then lost and forfeited all claim against Devine for the value of the work already done for him, and they never did any work for him on this house thereafter. It was under these circumstances that the contract sued upon was made.

By the terms of that contract the plaintiffs were to work directly for the defendant and not for Devine, and the defendant promised to pay them for such work done at her request as her own proper debt, and not as the debt of Devine. The defendant by that contract did not intend to, and did not in fact, undertake to do anything for anybody or on behalf of anybody save herself. It is true that she agreed to pay the value of the work which had been done under the sub-contract; but she agreed to pay this not as Devine's debt but as her own, and neither in law nor in fact was it, as we have seen, a debt, duty or obligation due from Devine at all. In short, it is impossible to see in the contract sued upon an undertaking by a person not before liable, for the purpose of securing or performing the same duty for which the party for whom the undertaking is made continues liable.

It follows that, tested by the rule applicable in such cases, as adopted by this court, the contract sued upon is not within the statute of frauds. *Packer* v. *Benton*, 35 Conn., 343; *Dillaby* v. *Wilcox*, 60 id., 71.

There is no error in the judgment of the court below.

In this opinion the other judges concurred.