SAMPSON BICE, JOSEPH H. BICE, AND CLARENCE E.
BICE v. THE MARQUETTE OPERA-HOUSE BUILD-
ING COMPANY.

*Statute of frauds—Promise to pay the debt of another—Estoppel.*

1. Where at the request of contractors who are unable to procure
the materials called for by their contract, which provides that in
case they neglect to supply such materials the owner of the
building to be erected may do so, and deduct the cost of the
same from any moneys due or to become due the contractors,
the owner of the building agrees to pay the material-men for
all materials thereafter furnished, his agreement is not within
the statute of frauds.[1]

2. The fact that the material-men still make a claim against the
contractors for the value of the materials furnished under said
agreement, and seek to enforce the same by suit against them
and by garnishment proceedings, will not affect their rights in
a suit brought against the owner upon said agreement; nor
will the recovery of a judgment against the contractors bar
plaintiffs' claim against the owner, unless the judgment is
satisfied.

Error to Marquette.   (Stone, J.)   Argued April 26,
1893.   Decided June 1, 1893.

*Assumpsit.*   Defendant brings error.   Affirmed.   The
facts are stated in the opinion.

*Clark & Pearl,* for appellant.

*Egbert J. Mapes,* for plaintiffs.

LONG, J.   On August 4, 1890, the defendant company
entered into a contract with Wilson & Moore by which
they were to erect for defendant an opera-house building
for the sum of $45,000, to be completed by July 1, 1891.
The contract provided that should the contractors at any

---

[1] See *Mitts v. McMorran,* 64 Mich. 664.

time refuse or neglect to supply sufficient material of the proper quality, or fail in any respect to prosecute their work with promptness and diligence, or fail in the performance of any of the agreements on their part, such failure being certified by the architect, the owners should be at liberty to supply the material, etc., and deduct the cost of the same from any moneys due or to become due to the contractors. The contract also contained the following provision:

" Before each payment, if required, the contractors shall give the architect good and sufficient evidence that the premises are free from all liens and claims chargeable to the said contractors; and, further, if at any time there shall be any lien or claim for which, if established, the owners or the said premises might be made liable, and which would be chargeable to the said contractors, the owners shall have the right to retain, out of any payment then due or thereafter to become due, an amount sufficient to completely indemnify them against such lien or claim, until the same shall be effectually satisfied, discharged, or canceled."

Bice, Pendill & Co. were merchants doing business at Marquette, and the plaintiffs in this suit are the successors to that firm, and have succeeded to all their rights by assignment. On August 28, 1890, and after the contract above specified had been made between defendant and Wilson & Moore, that firm submitted to Wilson & Moore a proposition to furnish certain materials for the building for the sum of $3,456.45. Their proposition was accepted, and the firm of Bice, Pendill & Co. furnished materials up to March 1, 1891, when they refused to furnish any more material upon the credit of Wilson & Moore unless the estimates for the material should be made directly to them, and the defendant should pay them directly therefor. Mr. Pendill called upon the architect, Mr. Charlton, and stated to him that they declined to furnish more materials unless they could see their way to get their pay. Mr.

Charlton, who audited all the bills, advised Pendill that if he would get an order from Wilson & Moore he would have the estimates made directly to the firm of Bice, Pendill & Co. The order was given by Wilson & Moore upon the defendant. This order became lost, and was not produced upon the trial; but Mr. Pendill testified that it was an order for the architect to make the monthly estimates for materials furnished by Bice, Pendill & Co. directly to them each month, and to pay to them directly upon such estimates; that he gave this order to Mr. Charlton, the architect, who agreed to make the payments directly to Bice, Pendill & Co. The whole of the materials were thereafter furnished, and on August 1, 1891, the following certificate given:

"MARQUETTE, MICH., Aug. 1, 1891.
"BICE, PENDILL & Co.,
"In account with WILSON & MOORE, Contractors and Builders:

"Due Bice, Pendill & Co. for material furnished
  for opera house _____ $3,595 51
April 1.  Less estimate_____ _____   933 00
                                                  _____
  Balance_____ _____ $2,662 51

"The above bill is correct.
                                  "WILSON & MOORE.
"I certify that the above material has been delivered, and has been built in the Marquette Opera-House Block, and is satisfactory.
                          "D. FRED CHARLTON,. Architect."

Mr. Charlton testified that he did not remember distinctly about the order, but had a faint recollection that he saw it, or was told the amount. He admits, however, that he certified the bill above set out.

This action is brought against the defendant company for the amount of the claim of Bice, Pendill & Co. for such materials. On the trial before a jury the plaintiffs had verdict and judgment for the amount of the claim.

The court directed the jury that it was not claimed on the part of the plaintiffs that the defendant company purchased the materials from them, or Bice, Pendill & Co., as the plaintiffs' firm was then known, "but that fact might not be controlling in this case. Did the defendant make the agreement that is claimed by the plaintiffs in their declaration? That is, did the defendant agree to pay direct to Bice, Pendill & Co.? * * * If you find that such agreement was made, the court advises you that it was not within the statute of frauds."

Substantially, the court advised the jury that if such an arrangement was made with the architect as plaintiffs claimed, and the architect had authority to buy materials, and pay for materials furnished by plaintiffs to Wilson & Moore, the plaintiffs might recover.

It is first contended by counsel for defendant that there is no proof to sustain the declaration. The declaration contains the common counts and a special count. The special count alleges, substantially, that Bice, Pendill & Co. refused to supply materials to Wilson & Moore unless the defendant would promise and agree to pay directly to Bice, Pendill & Co. the entire amount which might accrue and be owing for such materials as the said Bice, Pendill & Co. should thereafter furnish for the construction of said building, and to be paid to said Bice, Pendill & Co., according to estimates of the architect thereafter from time to time given; and that thereupon, at the request of said Wilson & Moore, and in consideration of the premises aforesaid, and that the construction of said building might not be delayed, the said defendant agreed with the said Bice, Pendill & Co. to pay to said Bice, Pendill & Co. directly all such sums of money as might be owing them for materials thereafter furnished by said Bice, Pendill & Co. in the aforesaid Marquette Opera-House building, from time to time, according to estimates made as aforesaid.

The count then sets out the furnishing of the materials according to such agreement, and that such materials were used in the construction of the building.

The court stated the plaintiffs' claim to the jury substantially as the claim is laid in the declaration, and directed them that the question in the case was whether the defendant made the agreement claimed in the declaration, and, if such agreement was made, plaintiffs could recover. The plaintiffs' proofs, we think, tended to sustain this theory of the case. It is shown that the architect promised plaintiffs to make the estimates directly to them thereafter, provided they obtained an order from Wilson & Moore. Some dispute arises over this order, but the proofs tend to show that the architect was satisfied with the arrangement, and did make the estimates as agreed, and paid the April estimate of $933, and certified to the delivery of the balance of the material used in the building, furnished by the plaintiffs. The plaintiffs' proofs tended to sustain the theory of the declaration, and the court was not in error in stating that the case was not within the statute of frauds. The defendant company had a right, under its contract with Wilson & Moore, at any time when the contractors failed to prosecute the work with diligence, to provide materials themselves, and deduct the cost from the moneys due on the contract. Before it made any payments on estimates to the contractors the defendant company had also the right to know of any liens or incumbrances which might be put upon the property, for which the company would be liable, and, if any such claims existed, to retain sufficient moneys out of any payment to meet such claims. Under these circumstances, when the defendant company found that plaintiffs would furnish no more material to Wilson & Moore, or upon their credit, it agreed to make the payments for such material directly to plaintiffs. The case, in principle, falls within the rule laid down in

*Calkins v. Chandler,* 36 Mich. 320, 324; *Bates v. Johnrowe,* 57 Id. 521. It was not a promise to pay the debt of Wilson & Moore, but a promise to pay, for the material put into the building, directly to Bice, Pendill & Co., and which Wilson & Moore agreed it might do. As was said by Chief Justice Shaw in *Nelson v. Boynton,* 3 Metc. 396, 402:

"The rule to be derived from the decisions seems to be this: That cases are not considered as coming within the statute when the party promising has for his object a benefit which he did not before enjoy, accruing immediately to himself; but where the object of the promise is to obtain the release of a person or property of the debtor, or other forbearance or benefit to him, it is within the statute."

The object to be accomplished by the defendant company was the immediate acquisition of those materials to put into the building. The purpose was not to benefit Wilson & Moore, or to obtain any forbearance for them, but to benefit the defendant company.

Some other reasons are argued and urged in this Court why the judgment should not stand. It is contended that the court was in error in leaving to the jury the question whether Charlton, the architect, had authority to make the agreement relied upon. We think the evidence justified the charge and the verdict.

It was shown on the trial that the plaintiffs, before the trial of the present case, had commenced suit against Wilson & Moore, in which they had judgment, and garnished a third party, for the price of these materials, and had also, in another proceeding, sought to obtain a lien upon the opera-house building; and it is claimed that such proceedings conclusively negative the claim now made. The fact that the plaintiffs still made a claim against Wilson & Moore could not affect their rights in the present proceeding. It is not claimed that Wilson & Moore were released from their indebtedness, and a judgment

against them would not bar the plaintiffs' claim against the opera-house company, unless there was a satisfaction of the judgment. It was not the theory of the plaintiffs that the defendant purchased the material of them, but that the defendant agreed to pay to them directly for the material, if the plaintiffs would furnish it on the contract with Wilson & Moore; and under the rule in *Calkins v. Chandler, supra,* it would not matter whether Wilson & Moore remained liable or not.

We need not discuss the other errors assigned. We have examined them, and they are overruled.

The judgment must be affirmed, with costs.

HOOKER, C. J., MCGRATH and MONTGOMERY, JJ., concurred. GRANT, J., did not sit.