THE ST.. JOHN & MARSH COMPANY v. JOHN G. CORN-WELL.

1. FOREIGN CORPORATION — *Authority of Agent.* An agent of a nonresident corporation, having general charge of its local business in a Kansas town, has no implied authority to collect debts due his principal by a contract for his own personal board; and a person owing such principal a debt, who furnishes the agent board, under an agreement that such agent shall give him credit for the amount thereof on the principal's debt, does so at his own risk.

2. CONTRACT, *Not Ratified.* Where, under such a contract, the agent gives the debtor credit on the books of the principal for parts of his board, and charges such amounts against himself, and deducts the same from his salary, and these credits are made known to the principal, who makes no objection thereto, or inquiry concerning the same, these facts alone do not amount to a ratification of the agent's unauthorized contract binding the principal for the amount due from the agent for board and not so credited.

*Error from Stafford District Court.*

THIS action was brought by the plaintiff in error to recover the sum of $115.66, which it claimed was due it as a balance on account for lumber and building materials sold to the defendant. The case was submitted to the trial court on an agreed statement of facts, from which it appears that the plaintiff is a corporation; that it sold to the defendant lumber as alleged in the petition, and that the plaintiff's account thereof is correct; but that the defendant claims credit on account of having boarded one Catlin, who was the agent of the plaintiff, in charge of its lumber yard at St. John. So much of the agreed statement as it is necessary to recite is as follows:

"That on the 22d day of February, 1888, John E. Catlin and defendant entered into the following parol agreement: That said Catlin should board with defendant and credit defendant upon his account with plaintiff for lumber and building material, then charged upon plaintiff's books of account, and which books of account were in the hands of said Catlin for collection; and the price to be paid for said board was $5 per week, which was to be credited weekly upon said account;

that defendant at the time believed that Catlin had authority to make such contract and bind the plaintiff thereby; that the said Catlin commenced boarding with the defendant on the 22d day of February, 1888, and continued to so board with defendant until the 16th day of March, 1889, the same being 51 weeks, 6 days, and 11 meals, which, at $5 per week, amounted to $261.85; that on the 2d day of April, 1888, said Catlin credited upon said account the sum of $27.50; that on the 2d day of June, 1888, he credited upon said account $43.50; that on the 19th day of March, 1889, D. F. McConnaughey, who was plaintiff's agent and auditor, as aforesaid, credited upon said account of defendant with plaintiff for lumber, etc., the sum of $50, on account of said board of J. E. Catlin; that at the time McConnaughey made this $50 credit he was in possession of and had full knowledge of all the facts of the contract of J. E. Catlin and the defendant for board; that McConnaughey knew, soon after they were made, that the credits of April 2, 1888, for $27.50, and June 2, 1888, for $43.50, on defendant's account with plaintiff, were made by J. E. Catlin on account of his board with defendant; that McConnaughey knew that J. E. Catlin was boarding with defendant at all times when he (McConnaughey) was here in St. John between the 22d day of February, 1888, and the 16th day of March, 1889; that McConnaughey nor anyone for him, nor the plaintiff herein, made any mention to the defendant of the credits above, to wit, $27.50 and $43.50, made on the defendant's account by J. E. Catlin, nor made any inquiry of defendant why such credits had been made; that J. E. Catlin, on or after the 22d day of February, 1888, up to and on the 19th day of March, 1889, was the local agent of plaintiff, resident at St. John, Kas., and managing its yard there, with full authority from plaintiff to sell lumber and building material, collect accounts due, and remit proceeds to plaintiff, take notes and security, file mechanics' liens; that the credits mentioned herein, $27.50, $43.50, and $50, is all that defendant has ever received credit from plaintiff on his said account for Catlin's board, and that the balance is due and owing defendant from said Catlin, unless the plaintiff has become responsible therefor in law; that Catlin was working for the plaintiff at a fixed salary of $55 per month, which was to be in full, and that he was to pay his own board and other ordinary expenses; that plaintiff was not responsible in any manner for the board of said Catlin unless made so by its conduct herein set forth;

that when said Catlin gave credit to the defendant upon plaintiff's account for the amount of his board at the different times set forth in this stipulation, he charged himself with the amount thus given credit for on his salary account as so much cash received by him on account and applied to his salary; that when the sum of $50 credit was made by McConnaughey on account of defendant, it was done at the request of Catlin, who then and there caused the same to be, and it was, charged against his salary account as so much cash received by him, and he accounted to the plaintiff for the same as so much cash, and paid the same to the plaintiff either in cash or by a credit upon his salary; that Fred. Smith and —— Bassett, whose board was credited upon said account, were in the employ of plaintiff, and that by agreement they paid to the plaintiff the said sums for which the defendant was given credit on account of their board, to wit, $6.75 and $3.75, or the same was charged to their salary account, and the plaintiff given credit therefor; that H. C. Wood, D. F. McConnaughey and Charles McAnaulty were parties employed by plaintiff upon a salary, including all expenses, traveling and otherwise, while away from their home or headquarters, which were at Hutchinson, Kas.; that while at St. John it became the duty of plaintiff to pay all their expenses, and if they paid out anything in cash, that the plaintiff was bound to refund the same to them; that under these circumstances they caused the said amount of their respective bills to be credited upon the account of defendant, and the same was credited by the plaintiff to expenses, the same as though they had paid out the money for expenses and had collected the money from the defendant; that the defendant had no knowledge of the facts as to the expenses of Wood, McConnaughey, McAnaulty, being paid by plaintiff as part of their compensation.

"It is agreed further, that neither the plaintiff, H. C. Wood nor McConnaughey knew anything about the contract between Catlin and the defendant except such knowledge as they derived from credit given upon the books as herein set forth until six or seven days before the credit of $50, of March 19, 1889, was given upon plaintiff's books, when he was informed of such contract by defendant; that Catlin left the employ of plaintiff about March 19, 1889; that the credit of $50 was given while Catlin was in the employ of the plaintiff; that if, under the law as applied to the facts herein, de-

fendant is not entitled to have the balance of the board bill of J. E. Catlin credited upon his account with plaintiff for lumber and building material, that he is indebted to the plaintiff in the sum of $115.66, with interest thereon from March 19, 1889, at the rate of 7 per cent. per annum; that Bassett and Fred. Smith were agents of plaintiff, of like authority with Catlin."

On these facts, the court rendered judgment in favor of the defendant for costs. The plaintiff company comes to this court.

*John W. Roberts*, for plaintiff in error.

*F. N. Cowgill*, for defendant in error.

The opinion of the court was delivered by

ALLEN, J.: The main question presented for our consideration in this case is whether the agent of a foreign corporation having general charge of a lumber yard located in this state, with authority to collect accounts due it, may, by entering into a contract for his personal board with a person indebted to the company, bind his employer to the extent of its claim. It appears that Cornwell was indebted to the plaintiff at the time Catlin contracted for his board. Catlin agreed that Cornwell should have credit on the account with the amount of his board at the rate of $5 a week. It appears that Catlin was working at a salary of $55 a month, which was in full for all his services. The plaintiff was under no obligation to board him, or pay any other of his personal expenses. It may be conceded that, as to the transaction of plaintiff's local business at St. John, Catlin was its general agent. The question then arises whether it will be presumed that Catlin had authority to bind the plaintiff for the payment of his personal expenses. The general rule is that the principal is bound by acts within the apparent scope of the agent's authority, irrespective of secret instructions or private agreements known only to principal and agent; but is the power to bind the principal for the board of the agent within the agent's apparent author-

ity? Parties dealing with him necessarily know that board is furnished for the personal benefit of the agent. It cannot be said that employers are generally responsible for the board or other personal expenses of their agents or employés. To carry such presumption to its logical end would make them responsible for clothing, household supplies, and other purely personal expenditures. We think no such authority can be presumed, and that when a party deals with an agent with reference to board, clothing, or any other matter which the party must know is furnished solely for the personal benefit of the agent, if he relies on the principal for payment, he does so at his peril. The defendant in this case expected Catlin to give him credit on the plaintiff's books for the amount of his board, and to charge himself with the same amount on his salary account. If this were done, it would be, of course, a proper and legitimate transaction, and would amount to a collection of the plaintiff's account; but until Catlin actually accounted to the plaintiff for the amount of his board, the contract remained purely a personal one between Cornwell and Catlin. It was Cornwell's place to see that Catlin complied with the contract. No obligation rested on the plaintiff to inquire into the terms on which Catlin procured his board. It was under no obligation to pay it, and therefore under no duty to make inquiries with reference to it. This is not a case in which the agent has attempted to discharge a debt due his principal by receiving in payment thereof an obligation of his own, which under the authorities he could not do. (Mechem, Ag., § 375; *Furniture Co. v. Mason*, 52 N. W. Rep. 671; *Deatherage v. Henderson*, 43 Kas. 684; *Scully v. Dodge*, 40 id. 395; *Organ Co. v. Lasley*, 40 id. 521.) In this case the agent undertook to bind his principal by a contract in advance for his own personal benefit, agreeing that the debt due the principal should be discharged by the board he was to receive. The defendant certainly could not fail to see that this arrangement was for the personal advantage of the agent, and must have known that the principal would

1. Foreign corporation— authority of agent.

reap no advantage from it unless the agent actually accounted for and paid over the agreed rate to the employer. It is well settled that the agent does not bind his principal by such contracts. (Mechem, Ag., *supra; Aultman v. Lee*, 43 Iowa, 404; *Rhine v. Blake*, 59 Tex. 240; *Williams v. Johnston*, 92 N. C. 532.)

It is urged on behalf of the defendant in error that the facts show a ratification of Catlin's contract. This is based on the items charged to himself by Catlin on plaintiff's books and credited to defendant on account of board. It is urged that these entries were brought to the knowledge of H. C. Wood, the company's general agent, who had full authority in all matters connected with the company's business, and of Mc-Connaughey, the company's auditor, and that such entries were notice of the existence of a contract between Catlin and the defendant, concerning the terms of which it then became the duty of the plaintiff to inquire. We think the ratification extends only to the items appearing in the account on plaintiff's books. As to such items it is of course a ratification, and no objection is now made to these credits by the plaintiff, but the defendant seeks credit for the balance due him for Catlin's board which was not credited on plaintiff's books. We do not think the plaintiff was under obligation to inquire into the terms of Catlin's contract for board, nor 2. Contract, not ratified. that its ratification of his acts extended to anything beyond the items appearing on its books. Generally a principal is held to have ratified the unauthorized act of an agent only when he has been fully informed of all of the facts and circumstances of the transaction, and then accepts some benefit or does some act inconsistent with a disaffirmance of the unauthorized transaction. (*Bohart v. Oberne*, 36 Kas. 284; *Reynolds v. Ferree*, 86 Ill. 570.)

We think the court erred in its conclusions in this case.

The judgment is reversed, with the direction to enter judgment in favor of the plaintiff for the amount claimed in its petition.

All the Justices concurring.