## THE UNION PACIFIC TOWN-SITE COMPANY v. CHARLES PAGE *et al.*

TOWN-SITE COMPANY—*Authority of Agent.* An agent of a town-site corporation engaged in building and promoting a town has no implied authority to purchase lumber and other supplies for private individuals to construct buildings upon their own lots, purchased by them from the town-site company, and to make the corporation liable for such lumber and supplies.

### *Error from Shawnee District Court.*

ON May 25, 1890, Page & Greenfield recovered a judgment against the Union Pacific Town-Site Company for $1,922.31, on an account for lumber and supplies alleged to have been furnished by them to the Union Pacific Town-Site Company. The account, commencing May 15, 1887, and ending August 26, 1887, was for $1,614.17, with interest. The parties admitted in open court that $725.71 of the account was for

material and supplies used for the purpose of erecting the company's buildings on the town site. The dispute on the trial was over the town-site company's liability for $888.36 of the account. On the 12th of February, 1887, the Union Pacific Town-Site Company was incorporated under the laws of the state, as a town-site company, for the purpose, as stated in its charter, "to buy and sell property, to locate and lay out town sites, and transact all other business incidental to a town-site company, including the purchase, location and laying out of town sites, and the sale and conveyance of the same in lots and subdivisions, or otherwise." H. P. Dillon was president and Frank S. Thomas was the secretary and treasurer of the company. Soon after the incorporation of the company, its officers purchased for it 1,200 or 1,400 acres of land in Logan county, and laid out the town site of Logansport. They hoped the town would be selected as the county seat of Logan county. The company put up buildings on the town site, among others, a hotel, town hall, stores, etc., and employed 30 or 40 men to lay out the town, grade streets, and make other improvements. The place of business of the corporation was at Topeka, in this state, which was the residence of its directors and principal officers. The capital stock of the corporation was $50,000. Thomas, the secretary and treasurer, went out to Logansport two or three times. W. T. Clark, one of the directors, was at Logansport a part of the time. He made arrangements with the contractors to construct buildings, and, with one W. C. King, personally superintended the sale of the lots of the company. The claim of the Union Pacific Town-Site Company is, that $888.36 of the materials and building supplies sued for in the petition of plaintiffs were never sold or delivered to the town-site company, but were actually sold and delivered to various private parties for buildings of their own, and that the company never authorized any of its agents to purchase the materials or supplies or to guarantee the payment of the same.

On the other hand, the claim of Page & Greenfield is, that in addition to the lumber for the company's buildings, Clark

wanted other lumber and supplies for other parties whom the plaintiffs would not trust, but that the company ordered the same through Clark for such parties. The town-site company asked, among others, for the following instructions:

"4. If you find from the evidence in this case that the defendant, the Union Pacific Town-Site Company, was erecting certain buildings upon lots owned by it in Logansport, Logan county, in this state, and that it had one or more persons in Logansport looking after the business of the company, selling lots and superintending the erection of its buildings, and while such person or persons were in Logansport selling lots and superintending the buildings of said company, then I instruct you that any arrangement or agreement made by such person or persons with the plaintiffs, by which they were to furnish lumber to other persons, and that the company should become liable for such bill or bills, would not be binding upon said company, and cannot be recovered in this action."

"8. The fact that Clark may have held himself out at Logansport as the agent of the defendant, superintending its business there in laying out and selling town lots, constructing buildings for the company, giving orders for lumber to be used in defendant's own buildings, and doing whatever might be necessary to be done for the company, would not authorize plaintiffs to furnish lumber to other parties for the erection of buildings for themselves, upon the orders of Clark or King, and could not by such act or acts make defendant liable for any lumber so furnished."

The court refused these and others, but gave the following instructions:

"4. A private corporation, such as the Union Pacific Town-Site Company, can only enter into contract for the purchase of lumber or other materials for building purposes by its officers or agents; and, when the public sell or deliver to the officers or agents of a town company engaged in building and promoting a town lumber or other material for building, and the sale and delivery of such lumber is sold and delivered to the officers or agents of such corporation in good faith, and the lumber or material is accepted and used by the officers or agents of such town company in the construction of buildings on its town site, then such corporation should pay for such lumber or material, and this would be so though the lumber

or material was used to erect buildings for persons to whom the corporation had sold, or agreed to sell, or give away lots, on its town site."

"6. I instruct you that an agent of a corporation can only bind his principal so long as he acts within the scope of his authority, or the apparent scope of his authority; and when he acts beyond the scope of the authority delegated to him by his principal, his acts do not bind his principal. In this case there is one important fact for you to determine: Were Clark and King, or either of them, the agents of defendant? And, if so, what was the extent of his or their authority? If you find from the evidence that Clark and King, or either of them, were the agents of the defendant, then, what was the extent of such agency? Did the defendant give Clark and King, or either of them, authority to purchase lumber and building material for other parties for the purpose of erecting buildings on the town site of Logansport, and charge the same to the defendant? If it did not, then neither Clark nor King could make this defendant liable for this lumber. But if you find by a preponderance of the evidence that Clark was one of the directors of the company, and you further find that Clark and King were in charge of the improvements and buildings that were being erected on the town site of Logansport, and engaged in selling lots for the company, and generally promoting the interest of the town, and that no other person was in charge of the enterprise, and that their conduct in managing the business at Logansport with the acquiescence or consent of the defendant was such as to induce a reasonable and prudent man to believe that Clark and King had authority to purchase lumber and material to build and erect buildings in the town site of Logansport, and that plaintiffs, in the exercise of care and diligence and in good faith, believing Clark and King were authorized to purchase the lumber and material for the purpose of assisting others to build and construct houses on the town site of Logansport, sold and delivered the lumber and material in dispute to parties for the erection of buildings on the town site of Logansport, and that the lumber was actually delivered at the town for the parties who held these orders, and that the same was used for the purpose for which it was purchased and sold, then, as between the defendant who suffered Clark and King to represent it and the plaintiffs who relied on the apparent authority of Clark and King, the defendant should suffer, if anyone, and it is liable

for the lumber sold and delivered, and used in the construction of buildings on its town site."

After the judgment of $1,922.37 was rendered in favor of Page & Greenfield, against the town-site company, the company excepted, and brings the case here.

*S. B. Isenhart,* for plaintiff in error.

*Edwin A. Austin,* for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: The contention in this case is over the instructions given and refused. It appears that Page & Greenfield, doing business at Monument, in this state, furnished lumber and supplies for the buildings of the following parties at Logansport: Butler, Walters, Barnes, Wolver, Mrs. Handley, the Smith Brothers, and Smith & McCue. They knew at the time of selling the lumber that it was to be used in the buildings of these parties, who had purchased lots of the town-site company. They charged all of this lumber to the town-site company and have recovered judgment on account thereof against it.

If this case were here upon the ground that the evidence did not sustain the verdict, or that the town-site company had no authority under its charter to purchase the lumber and supplies in dispute, we could sustain the judgment, upon the testimony in the record. (*Whetstone v. Ottawa University,* 13 Kas. 320; *Town Co. v. Morris,* 43 id. 282; *Town Co. v. Swigart,* 43 id. 292; *Town Co. v. Russell,* 46 id. 382.) But the real question before us is whether the instructions as given were misleading or erroneous. There was evidence offered tending to show that Frank S. Thomas, the secretary and treasurer, living at Topeka, had general charge of the affairs of the company; that W. T. Clark was the general manager of the company at Logansport; that Thomas told Page & Greenfield "that Clark represented the company, and that any instructions received from Clark, King or Beamer were all right." There was also testimony offered tending to show

that the town-site company was interested in having the persons to whom Page & Greenfield furnished the lumber sued for, complete their buildings at an early date upon the lots purchased by them from the company.   There was also much other testimony offered showing the authority of Clark to represent the company at Logansport, and to make contracts generally to promote the prosperity and the general interests of the company, but the testimony is conflicting.

The claim of the town-site company is, that the account for $888.36 was ordered by parties having no authority to charge or make the company liable for the same; that W. T. Clark was simply a director at the time in the company; that his wife held stock in the company; that he was not employed by the company, and never drew a dollar of salary in his life; that the company paid his railroad expenses back and forth from Topeka to Logansport to attend to some business for the company, so as to assist in making his wife's stock more valuable, and that was the only capacity in which he acted; that all of the 30 or 40 men working for the company at Logansport were employed by the carpenters and not by Clark; that Clark made arrangements with the carpenters to erect the company's buildings; that he had something to do with the sale of the company's lots; that the town company had no office at Logansport; that Clark had some letter heads printed on his own account and for his own correspondence, on which he designated himself as special agent; that these were the only ones he had printed, but that he had no authority whatever from the company to do so; that Thomas paid all of the bills for lumber, materials and labor for the company's buildings; that King went out to Logansport to sell lots, but was not in any manner in the company's employ; that he was never paid anything, but had some means, and went to Logansport to speculate on his own account; that he was not a laboring man, but a friend of Clark's; that the first thing he, Thomas, knew about the bills for lumber furnished to private individuals was along in September, 1887, after it had been furnished; that he received bills from

Page & Greenfield amounting to something over $1,000 for lumber which they claimed to have furnished to private parties; also, that he received a letter with the bills stating they were ordered by the company's agent, King; and that this was the first he knew anything about these bills or the payment of the same having been guaranteed; that the town company never gave Clark or King any authority whatever to furnish lumber to other or private individuals, or to guarantee any such bills.

The fourth instruction given by the court to the jury permitted a verdict for Page & Greenfield, if they sold the lumber or supplies in dispute to any officer or agent of the company in good faith, engaged in building and promoting the town, if the lumber and supplies were actually used in the construction of buildings upon the town site, although the buildings were for persons to whom the corporation had sold or agreed to sell lots. This instruction did not confine the sale of lumber or supplies to the general or managing agent of the company at Logansport, but used the words, "officers or agents of the company engaged in building and promoting the town"; that is, any officer or any agent of the company. According to the instruction, the belief in good faith on the part of the corporation that any officer or agent had authority to purchase lumber for private individuals to be used upon their own lots on the town site, carried with it the presumption that the company was liable. It is well said by counsel for the corporation that—

"Every carpenter, builder and other person working for the town company at Logansport appeared to have some sort of authority, and, to some extent, did have some ; but if each and every one of these individuals could go out, and, on account of his apparent authority, buy lumber and materials for other persons and bind the corporation, then it is apparent that the company was unfortunate in the extreme."

Such is not the law of agency. Again, instruction No. 6 was contradictory and confusing in its terms, so much so as to be prejudicial. It was ruled by this court, in *St. John Co.*

24—54 KAS.

*v. Cornwell*, 52 *Kas.* 712, that an agent of a corporation having the general charge of its local business has no implied authority to collect debts due his principal by a contract for his own personal board. It was observed in that case:

"The general rule is, that the principal is bound by acts within the apparent scope of the agent's authority, irrespective of secret instructions or private agreements known only to the principal and agent; but is the power to bind the principal for the board of the agent within the agent's apparent authority? Parties dealing with him necessarily know that board is furnished for the personal benefit of the agent. It cannot be said that employers are generally responsible for the board or other personal expenses of their agents or employés. To carry such presumption to its logical end would make them responsible for clothing, household supplies, and other purely personal expenditures. We think no such authority can be presumed; and when a party deals with an agent with reference to board, clothing or any other matter which the party must know is furnished solely for the personal benefit of the agent, if he relies on the principal for payment, he does so at his peril."

So an agent of a town-site corporation has no implied authority to purchase lumber or other material for private individuals to build houses upon lots which they had purchased of the company.

Of course, the company may give its general agent such authority, in order to facilitate the sale of its lots or to promote its general interests, but the instructions proceed too much upon the implied authority of an agent, and, therefore, are not applicable strictly to the facts disclosed upon the trial. Had the jury been instructed to find in favor of Page & Greenfield, upon the statements of Thomas to Page and others, concerning the authority of Clark, King, and Beamer to represent the company generally, and to do everything necessary at Logansport to promote its interest in every way, we would not interfere. "The purpose of securing improvements on a town site is not simply that the improvements be there, but that thereby the property the corporation has to sell may be enhanced in value." (*Town Co. v. Russell*, supra.)

If, upon sufficient evidence of a ratification by the town-site company of the acts of Clark, King, and Beamer, the jury had been instructed to find for Page & Greenfield on account of such ratification, the judgment might be supported. A promise to pay another's debt, not for the other's sake, but for the benefit of the promisor, is not within the statute of frauds. (*Winn v. Hillyer*, 43 Mo. App. 139; *Hughes v. Fisher*, 15 Pac. Rep. [ Colo.] 702; *Wood v. Moriarity*, 9 Atl. Rep. 427; *Parks v. Stafford*, 16 N. Y. Supp. 756; *Buchanan v. Moran*, 62 Conn. 83; *Brice v. Opera House Co.*, 96 Mich. 24; *Darst v. Bates*, 95 Ill. 498; *Davis v. Patrick*, 141 U. S. 488.)

With some reluctance, we feel compelled, on account of the instructions given, to reverse the judgment, and remand the cause for further proceedings.

All the Justices concurring.